STATE OF IOWA V. T. H. RHODES, Appellant.

**Intoxicating Liquors: Common Carrier.** Where a station agent was informed that a box consigned to W. H. marked, "groceries," but containing liquor would arrive, on the arrival of such a box, he may properly be charged with knowledge that it contained liquor. (1)

**Interstate Commerce.** Where liquor is transported to a point in this state in violation of McClain's Code, section 2410, Iowa law takes effect as soon as the boundary is crossed. (2)

**Conveying From Place to Place, Defined.** Taking intoxicating liquor delivered upon the platform into the freight house is a "conveying from place to place," within said section. (3)

*Appeal from Washington District Court.*—HON. D. RYAN, Judge.

TUESDAY, MAY 8, 1894.

THE defendant was convicted, and fined one hundred dollars, for knowingly, willfully, and unlawfully receiving, for the purpose of delivering to another, certain intoxicating liquors, which were being, as it is alleged, unlawfully conveyed in this state. He appeals. *Affirmed.*

*H. M. Eicher* and *Hedge & Blythe* for appellant.

*John Y. Stone,* Attorney General, *Thos. A. Chesshire, C. J. Wilson* and *E. M. Shelton* for the state.

KINNE, J.—I. The defendant was arrested upon an information charging that he was the agent of the Burlington & Western Railway Company at Brighton, Iowa, and that on August 6, 1891, as such agent, he "did knowingly, willfully, and unlawfully receive, for the purpose of delivering to another, certain intoxicating liquor that was being unlawfully transported or

conveyed from Burlington, Iowa, to Brighton, Iowa, viz., one box containing a two-gallon jug, and said jug being full of whisky, alcohol, or other intoxicating liquor; said box being marked 'W. H., Brighton, Iowa,' and not plainly or correctly labeled or marked, showing the quantity and kind of liquor contained therein.'' The case was first tried before a justice of the peace, and defendant was convicted, and fined one hundred dollars. From this judgment he appealed to the district court, where a jury was waived, and a trial had to the court. He was again found guilty, and adjudged to pay a fine of one hundred dollars, from which judgment this appeal is prosecuted. From the evidence, it appears that on August 4, 1891, the Dallas Transportation Company, a corporation doing business in the state of Illinois, delivered to the Chicago, Burlington & Quincy Railway Company, at Dallas, Illinois, one wooden box, about a cubic foot in size, marked ''W. H., Brighton, Iowa;'' that the consignor of said box, when it left it with the railway company for transportation, represented to the railway company that it contained groceries. This box was shipped over the Chicago, Burlington & Quincy Railway to Burlington, Iowa, and then transferred to the Burlington & Western Railway for shipment to Brighton, Iowa. The shipment was made the entire distance upon a single waybill. August 5, 1891, said box arrived at Brighton, and was delivered on the depot platform by the trainmen. Immediately thereafter the defendant, in compliance with the directions of his employers, carried said box from the platform into the freight room of the depot building, where, on the same day, it was seized by a constable under a search warrant. At the time of the seizure the freight on the box was due and unpaid. Inclosed in the box was a jug containing whisky, but it was so inclosed as to be hidden from view. At the time it was seized, the box

was being held by the railway company for the payment of charges, and for delivery to the consignee. Neither the defendant, nor the road by whom he was employed, held a permit for the transportation or sale of intoxicating liquors; and neither had a certificate from the county auditor that the consignee was authorized to sell intoxicating liquors in Washington county, Iowa. Previous to the arrival of the box, a mail carrier told defendant he was looking for a box from Dallas City for William Hown, and said it was likely to be marked "W. H.," and would contain alcohol or whisky. He told the mail carrier that he had not received a box of that description. It arrived the next day. He supposed, perhaps, this was the box the mail carrier told him would come.

II. The information in this case is based upon a violation of Code, section 1553, as amended (McClain's Code, section 2410). This section provides that: "If any express company, railway company, or any agent or person in the employ of any express company, or of any common carrier, or any person in the employ of any common carrier, or if any other person, shall transport or convey between points, or from one place to another within this state, for any other person or persons or corporation, any intoxicating liquors, without first having been furnished with a certificate from and under the seal of the county auditor of the county to which said liquor is to be transported, or is consigned for transportation, or within which it is to be conveyed from place to place, certifying that the consignee or person to whom said liquor is to be transported, conveyed or delivered, is authorized to sell such intoxicating liquors in such county, such company, corporation, or person so offending, and each of them, and any agent of such company, corporation, or person so offending, shall, upon conviction thereof, be fined in the sum of one hundred dollars for each offense and

pay costs of prosecution, and the costs shall include a reasonable attorney fee to be assessed by the court, which shall be paid into the county fund, and stand committed to the county jail until such fine and costs of prosecution are paid. The offense herein defined shall be held to be complete and shall be held to have been committed in any county of the state, through or to which said intoxicating liquors are transported, or in which the same is unloaded for transportation or in which said liquors are conveyed from place to place or delivered. It shall be the duty of the several county auditors of this state to issue the certificate herein contemplated, to any person having such permit, and the certificate so issued shall be truly dated when issued, and shall specify the date at which the permit expires as shown by the county records. Provided, however, that the defendant may show as defense hereunder, by preponderance of evidence, that the character and circumstances of the shipment and its contents were unknown to him." Under this section, in order to sustain the judgment in this case, it must appear that defendant, knowing that the box contained intoxicating liquor, transported or conveyed the same between points, or from one place to another, within this state, without first having been furnished with a certificate from the county auditor. We think defendant's testimony, heretofore referred to, clearly shows that he knew that the box contained intoxicating liquors. It is conceded that neither defendant, his company, nor William Hown, had a right or permit to sell intoxicating liquors, and that neither defendant nor said company had a certificate from the auditor of Washington county, showing that any of the persons named were authorized to keep or sell intoxicating liquors.

But two questions remain to be considered: *First*, did the liquor, when it first entered this state, become subject to the jurisdiction of our laws, or would such

jurisdiction only attach when the shipment had reached
its destination, viz., Brighton, Iowa, or when it was
delivered to the consignee? And, *second*, was the
defendant, in the removal of the liquor from the plat-
form to the freight depot, engaged in transporting or
conveying it, within the meaning of the section quoted?

An elaborate argument is made by defendant's
counsel to show that the liquor did not become subject
to the jurisdiction of our laws until its "arrival in" this
state; and it is contended that it did not arrive within
the state, within the meaning of the Wilson bill, until
the contract of carriage had been completed. The
so-called "Wilson Bill" reads as follows:. "All fer-
mented, distilled or other intoxicating liquors or liquids
transported into any state or territory, or remaining
therein for use, consumption, sale or storage therein,
shall, upon arrival in such state or territory, be subject
to the operation of the laws of such state or territory,
enacted in the exercise of its police powers, to the same
extent and in the same manner as though such liquids
or liquors had been produced in such state or territory,
and shall not be exempt therefrom by reason of being
introduced therein in 'original packages' or otherwise."
We do not deem it necessary to enter into an extended
consideration as to what is interstate commerce. We
think the language of the Wilson bill, when considered
with reference to the evil sought to be remedied, clearly
indicates an intention on the part of congress to make
such liquors the subject of state legislation and juris-
diction the moment they cross the boundary of Iowa,
and enter the state. Under the decision in *Leisy's
case*, 135 U. S. 123, 10 Sup. Ct. 681, such liquors in
original packages did not become the subject of state
jurisdiction until mingled with the common mass of
property therein—until sold. In that case the right of
congress to permit the state to exercise jurisdiction over
such articles prior to their sale therein was fully recog-

nized. It was for the purpose of removing all impediments to local jurisdiction, as to imported liquors, on their arrival within such jurisdiction, that the Wilson bill was passed. *Wilkerson v. Rahrer*, 11 Sup. Ct. 865. By the Wilson bill, these imported liquors, upon arrival within the state, were subjected to the operation of its laws enacted in the exercise of its police powers, as fully as though such liquors had been produced in such state. Now, if, in this case, the liquor had been produced at a point within the state, and consigned, over the Burlington & Western Railway, to Brighton, Iowa, there could be no question that our laws would apply thereto; and it is equally clear that upon crossing the border of this state, and entering it, such imported liquor becomes at once subject to its laws, the same as if produced in the state. *In re Spickler*, 43 Fed. Rep. 653, the circuit court of the United States, in treating of this matter, says: "The Wilson bill, upon its adoption, made subject to state police laws all imported liquors, as soon as they should pass *within the boundary of the state."* In the case of *In re Van Vleit, Id.* 761, it is said: "The original package, when it arrives within the state where its transit terminates, is at once reduced to the rank of domestic liquor—enjoys no privileges not enjoyed by domestic liquor." In *State v. Fraser*, 48 N. W. Rep. (N. D.) 343, the court said: "On crossing the *boundary line of a state*, the supreme authority has declared by this enactment that interstate liquor ceases to be an object of federal protection and control, and becomes mingled with the mass of property within the state, and, in common with all such property, is subject to local police regulations. If, as appellant contends, imported liquors consigned to a place within this state could be lawfully transported thereto, it is certain that such liquors would not be subject to the operation of our laws" to the same extent, and in the same manner, as liquors produced in this state. It seems to us that the

view that state jurisdiction attaches when the imported liquor enters the state is not only in accord with a reasonable construction of the Wilson bill, itself, but in furtherance of the purposes sought to be accomplished by the passage of that act, and finds full support in the authorities.

III. Was the defendant, in the removal of the liquor, engaged in transporting or conveying it, within the meaning of our statute? The language of the statute is broad enough to cover the act of defendant in removing the liquor from the platform to the freight room of the depot. He was one of the instruments necessary to complete the act of transportation. If this be so, then, clearly, he is within the terms of the act, as he conveyed the liquor from "one place to another within this state." His guilt is not to be determined by the distance he conveyed the package, but his conveying it any distance was a violation of the law. With the propriety of legislation making such an act a crime, and with the severity of the punishment attached to doing the act, we have nothing to do. The judgment below must be AFFIRMED.