STATE OF IOWA, Appellee, v. FLOYD SALISBURY, Appellant.

No. 39765.

NOVEMBER 21, 1929.

*C. F. Wennerstrum,* for appellant.

*John Fletcher,* Attorney-general, *Neill Garrett,* Assistant

Attorney-general, and *J. D. Threlkeld*, County Attorney, for appellee.

ALBERT, C. J.—The place where this crime is alleged to have been committed is somewhat remote from any city or town. There is a highway running north and south, and on the land adjoining this highway on the east is where it is said to have occurred.

The first seven errors assigned go to the question of the sufficiency of the testimony to support the verdict. The land where the crime was alleged to have been committed was owned by one  Perigo. One Perkins, an employee of Perigo's, was engaged in mowing weeds on the land in August, 1928. It appears that at one time, at a point on the land some 60 feet east of the highway, there had been a barn, which had been destroyed or removed, leaving a foundation and some pieces of lumber lying in that vicinity. Perkins, in pursuance of his employment, knowing of the existence of this lumber, stopped mowing, to avoid having his machinery come in contact therewith, and he there discovered, stowed away in this pile of lumber, six cans of alcohol. He did not remove them, but later in the day, advised his employer of his discovery. The latter then notified the sheriff, who sent deputies to the place, to watch the same. They did so continuously, and about midnight, on August 15th, the defendant drove north on this byroad for some distance, then reversed his direction, and stopped his car in front of the gate leading into this land on the east. He alighted from the car, carrying a flash light, which he used to guide him into the place. He followed the wagon track into the place, passed the south side of the barn, threw his light in the direction where the liquor was hidden, and moved forward, but did not get within 40 or 45 feet of the place where the liquor was stored. He then turned, and started back toward the car, whereupon the officers arrested him. Immediately thereafter, one of the officers asked him something about his presence there, and the liquor, and he said, "When I saw the weeds cut, I figured it went with the weeds." The witness further said: "I heard him [defendant] say, when he saw the tracks, he had a hunch not to go in." This witness testified that, on the road to Chariton, during a conversation between Shaffer (another witness) and the defendant, the de-

fendant made the statement that, if Milthrope (another witness) said this liquor had been there for a long time, he (Milthrope) would not know good liquor when he saw it.

Defendant was then taken into Chariton, to the office of one Hickman, and the defendant said to Boyland, the deputy marshal, ''Why didn't you tell me the law was out there, and I wouldn't have went out?'' Boyland corroborates this latter statement, and other witnesses corroborate admission of these various statements by the defendant.

We have held that a weed or brush patch is a ''place,'' within the meaning of the statute. *State v. Cahalan,* 204 Iowa 410. In *State v. Friend,* 206 Iowa 615, we held that the crime of maintaining a liquor nuisance does not necessarily include a sale of the liquor so kept, but does consist in maintaining a place where intoxicating liquors are kept for that purpose. Of course, like all other crimes, this one may be established by circumstantial evidence. *State v. Carlson,* 203 Iowa 90; *State v. Hester,* 205 Iowa 1047. A question very similar to this was passed upon by this court in *State v. Japone,* 202 Iowa 450.

Under the well established rules of this court, we are inclined to, and do, hold that the evidence in the case was sufficient to take it to the jury.

Appellant insists that, under the holding in *State v. Albertson,* 206 Iowa 39, this conviction cannot be sustained.

In the *Albertson* case, the charge was larceny, and the best the state could show was that the defendant was within 20 feet of the property which was alleged to be the subject of larceny. We there held that the evidence was not sufficient to sustain a conviction. But the facts in the case at bar go beyond the facts in the *Albertson* case, by showing the various admissions made by the defendant in relation to the liquor in question. As suggested, we think that these added facts make sufficient evidence to carry the case to the jury.

The case of *State v. Friend,* 207 Iowa 742, is relied upon by the appellant; but in that case the defendant resided with his mother, who was the owner of the property, or at least the head of the family, and controlled the household, and she testified that she was the owner of the liquor which was the subject of the charge. We held in that case that, under the record, the State had failed to prove that the liquor was in the possession of the

defendant. The evidence in the case at bar shows, however, inferentially at least, that Perigo, the owner of the property here, was not the owner of this liquor. The *Friend* case does not go far enough to aid the defendant herein.

When the defendant was arrested, the liquor was brought to town by the officers and labeled, and was brought into court  by the officers as evidence in the case. The defendant questions the admissibility of these exhibits; but, under the rule heretofore announced by this court, they were properly admitted.

One of the strongest points urged by the defendant for reversal is that certain witnesses were asked as to the place of residence and the business of the defendant. This testimony as to  the place of residence, while wholly immaterial, was nonprejudicial. A hotel keeper testifies that defendant had been rooming at his hotel for the first 15 days in August. He was then asked about the business or employment in which the defendant was engaged, and his answer was, "I don't know." Again he answered, in response to a similar question, "I don't know what he was doing." Another witness was asked the same question, and his answer was, "None whatever that I know of." This evidence could not be prejudicial, as the defendant might have been continuously employed in a legitimate business, and the witness not know anything about it. A third witness was asked the same question, and his answer was, "I don't know of any work that he did." What has just been said about the second witness is equally true as to the answer of the third witness. Under the circumstances, we do not feel that this evidence was prejudicial, even though it was held to be immaterial.

It is insisted that Instruction No. 7, taken in conjunction with Instructions 2 and 3, is contradictory and confusing to the jury, thereby resulting in prejudice to the defendant. We have read these instructions carefully, and do not find the conflict complained of. It is well settled that the court need not state all of the law in a single paragraph of the instructions. *State v. Reed*, 205 Iowa 858.

An instruction on circumstantial evidence was given, which is attacked; but the instruction given is, in substance, identical

with an instruction which was held good by this court in *State v. Friend,* supra.

Defendant asked for instructions which were refused, and rightfully so, because the subject-matter was covered by the instructions given by the court. See *State v. Render,* 203 Iowa 329.

Viewing the case as a whole, we think that the defendant had a fair and impartial trial, and that no errors were committed which were prejudicial to him.—*Affirmed.*

STEVENS, DE GRAFF, MORLING, and KINDIG, JJ., concur.