Ray P. Scott, Appellant, v. State Board of Assessment and Review et al., Appellees.

No. 43540.

May 5, 1936.

Ray P. Scott, and Geo. F. Heindel, for appellant.

C. E. Walters, Special Assistant Attorney General, John K. Valentine, and Clair Hamilton, Assistant Attorney General, for appellees.

Richards, J.—Chapter 82 of the Acts of the Extraordinary

Session of the Forty-fifth General Assembly of Iowa (Code 1935, section 6943-f1 et seq.) purports to impose a personal net income tax, a business tax on corporations, and a retail sales tax. Plaintiff, an income tax payer within the purview of the act, brought this action in equity on his own behalf, and allegedly on behalf and for the benefit of all other personal net income tax payers, alleging that aforementioned chapter 82 was not legally enacted, and praying that defendants be enjoined from the assessment against or collection from plaintiff and all others of the personal net income tax imposed in said chapter. Defendants are the officials of the state on whom the act conferred the powers of its administration, including the collection of the taxes.

Pertinent to plaintiff's claim that above-mentioned chapter 82 was not legally enacted, we first outline the facts as shown in the record. This act originated as a bill introduced in the House of Representatives on November 9, 1933, designated as House File No. 1. Subsequently it was read a first and second time, and amended in certain particulars. On January 25, 1934, the bill was read a third time and immediately placed upon its final passage, and upon a yea and nay vote the bill as amended was passed by the House by a constitutional majority, the ayes and nays being entered on the journal. On the last-mentioned date the bill reached the Senate, where on later days it was read a first and second time. Amendments were proposed and adopted. On February 7, the bill was read a third time, placed immediately upon its final passage, and upon a yea and nay vote passed the Senate by a constitutional majority, the ayes and nays being entered on the journal. On February 8, the House refused to concur in the Senate amendments. On February 12, a joint conference committee of the two Houses was appointed. On February 20, 1934, the conference committee having come to an agreement, their report recommending that the bill as passed by the House be amended in certain respects, was filed in both Houses. In the House of Representatives, on February 21, 1934, on the question, "Shall the house adopt the conference report and concur in the amendments proposed therein?" a majority of all the members elected to that House voted aye, the vote being taken by ayes and nays and entered on the journal. On February 22, 1934, in the Senate, on the question, "Shall the report be adopted and the amendments therein proposed concurred in?" there was an affirmative vote by a majority of all

the members elected to the Senate, the vote being taken by ayes and nays and entered on the journal. Thereafter the bill was enrolled, was signed by the President of the Senate and Speaker of the House, approved by the Governor, published, and lodged in the office of the Secretary of State.

Such being the facts, we now digress to quote the language of section 17 of article III of the Constitution of Iowa, which is as follows:

"Passage of bills. Sec. 17. No bill shall be passed unless by the assent of a majority of all the members elected to each branch of the General Assembly, and the question upon the final passage shall be taken immediately upon its last reading, and the yeas and nays entered on the journal."

█ █ █ Upon this constitutional provision plaintiff bases his proposition that the act in question was not legally enacted. His contention is that the passage of the bill by the adoption of and concurrence in the conference committee's report by each House, in the manner above shown, is violative of above-quoted section 17, article III, because, as plaintiff claims, the bill as amended by the conference committee's report could be passed only by the question being taken in each House immediately upon a last reading of the bill as so amended; with the ayes and nays entered on the journal. It has been shown above that the question on the adoption of and concurrence in the conference committee report was by ayes and nays in each House, entered upon their respective journals, and that the constitutional majority in each House as defined in said section 17, voted aye. It follows that the record establishes that the bill was passed by the assent of a majority of all the members elected to each branch of the General Assembly as required by the first phrase of above section 17, unless the manner of ascertaining such assent was violative of the second phrase of the section. In attacking the manner of ascertaining such assent as violative of constitutional procedure, the only complaint plaintiff can make is the one already mentioned, namely, the fact that the bill as amended by the conference committee report was not read, or did not have "its last reading," followed immediately by the question being taken upon the "final passage". As we understand plaintiff's contention, the effect of the omission just mentioned is determinative of this controversy.

It is an interesting matter of observation that it was in the middle portion of the preceding century that it became the practice to lay down, in the constitutions of the various states, procedural requirements and restrictions to be observed by legislatures in the process of enacting laws. Previously legislatures had been largely untrammeled in the matter of controling their own legislative procedure. Many of these comparatively recent constitutional provisions are expressive of regulations which legislatures had anciently prescribed for their own guidance. One of these old and commonly adopted rules provided that a bill upon being introduced in a legislative house should be read three times on as many different days before submission of the question of its passage. The writers of our Constitution did not in terms include therein this rule. Yet we think its almost universal adoption and observance by legislative bodies was recognized in the writing of our Constitution, because section 17, above quoted, contemplates a "last reading" of all bills. The writers of the Constitution evidently contemplated that the legislatures of Iowa would follow this rule, and that they would do so for the accomplishment of its primary purpose, that is, avoidance of the evils that might follow in the train of enactment of bills immediately upon presentment to the legislative house. The purpose of the rule is to inform legislators, and the people, of legislation proposed by a bill, and to prevent hasty legislation. Smith v. Mitchell, 69 W. Va. 481, 72 S. E. 755, Ann. Cas. 1913B, 588.

The foregoing considerations should be kept in mind if we are to rightly understand the intent expressed in above section 17, and particularly the purpose in the use of the words "final passage", around which two words revolve the arguments of these litigants. Defendants contend that "final passage" as contemplated by section 17, with respect to which certain procedure is prescribed, is the passage of a bill by either one of the Houses, as the case may be, by a constitutional majority, following the last one of the consecutive readings of a bill which has been newly introduced or newly received from the other house. Plaintiff cannot well question the correctness of such proposition in a situation where the house of origin and the receiving house each so passes the bill in the same identical form. But in a case where the receiving house passes the bill in accordance with section 17, but in an amended form, and then the two houses compromise their differences and arrive at agreement through a

joint conference committee, which is another ancient instrumentality of legislatures, plaintiff would extend the intendment of the words "final passage" so as to include such a situation, plaintiff claiming that the proposed legislation as set out in the conference committee report must take the course of successive readings in the same manner as if the so proposed legislation were a new bill. The essence of plaintiff's contention in that respect is that the legislation proposed by the conference committee could not be adopted or passed unless such proposed legislation be given "a last reading" in each house and the question taken immediately upon such last reading. To sustain this position plaintiff stresses the thought that there is no final passage of any bill until each house has passed such bill, identical in its terms with one passed by the other house. But in the urging of such proposition, plaintiff is talking about the *enactment* of a bill, by the General Assembly, by the legislative body as a whole. We think therein plaintiff would attribute to section 17 an extension of purpose not fairly indicated as the intent of the framers of the Constitution. One reason is the fact the evident constitutional purpose of successive readings, as already described, had been accomplished before the bill went to conference. But another reason is that the latter phrase of section 17, wherein the words "final passage" are found, has reference to the passage of a bill in one house or the other house, at the *finis* or end of certain prescribed procedure, in that house. The procedure laid down in section 17 has reference to "each branch of the General Assembly" and the proceedings in each branch or house. Thus it appears that the application to the functioning of the legislature as a whole of the words "final passage", is erroneous. The word "final" is descriptive of a boundary or end of *something*. Plaintiff says that this something, the end of which is described by the word "final" in section 17, is the functioning of the legislature as a whole in enacting a law. But in section 17 it is the functioning of each house separately that is the subject-matter being considered, and the word "final" should have corresponding application. We have already shown that the writers of the Constitution evidently contemplated successive readings of new bills in each house and that the question upon the final passage in each house is to be taken immediately upon the bill's last reading. The end or boundary inferred by this word "final" in the expression "final passage" quite evi-

dently has but one thing of which it is the end or boundary, and that is the successive readings of the new bill, at the end of which readings comes the passage described as "final". It follows that in each house there was a final passage of House File No. 1 and the question upon such final passage was taken immediately after the last reading of the bill and the question carried affirmatively by a constitutional majority and the ayes and nays were entered on the journal of each house and thereby the provisions of the last phrase of section 17 were fulfilled. The first phrase of section 17 provides that no bill shall be passed unless by assent of a majority of all the members elected to each branch of the General Assembly. When each house concurred in and adopted the report of the conference committee, by an aye and nay vote entered upon the journal of each house, by a constitutional majority, that is by the affirmative vote in each house of a majority of all members elected to that house, the requirements of the first phrase of section 17 were met and fulfilled, and we can find no constitutional inhibition on the procedure followed in connection with the conference committee report.

Although the cases are not in entire accord, we think the weight of authority in other jurisdictions sustains our conclusion. State v. Liedtke, 9 Neb. 490, 4 N. W. 75; Cleland v. Anderson, 66 Neb. 252, 92 N. W. 306, 96 N. W. 212, 98 N. W. 1075, 5 L. R. A. (N. S.) 136; State v. Dillon (1900) 42 Fla. 95, 28 So. 781; Hull v. Miller, 4 Neb. 503; School Dist. v. Chapman (C. C. A.) 152 F. 887; Johnson v. Great Falls, 38 Mont. 369, 99 P. 1059, 16 Ann. Cas. 974; State v. Crowe, 130 Ark. 272, 197 S. W. 4, L. R. A. 1918A, 567, Ann. Cas. 1918D, 460; Wilson v. Young County H. & F. Co. (Tex. Civ. App.) 262 S. W. 873; McCulloch v. State, 11 Ind. 424; Brake v. Callison (C. C.) 122 F. 722.

While plaintiff cites authorities to the contrary, including Norman v. Kentucky Board, 93 Ky. 537, 20 S. W. 901, 18 L. R. A. 556, Cohn v. Kingsley, 5 Idaho 416, 49 P. 985, 38 L. R. A. 74, Glenn v. Wray, 126 N. C. 730, 36 S. E. 167, he relies in argument particularly on Smith v. Thompson, 219 Iowa 888, 258 N. W. 190, 197. In this latter case there was involved the question whether chapter 89 of the Laws of the Forty-fifth General Assembly had been enacted by the General Assembly in a constitutional manner. The opinion, after holding the act unconstitutional by reason of failure of the legislature to observe the pro-

visions of section 29 of article III, proceeds to consider. the further question whether the legislature in passing the act had observed section 17 of article III, the same section of the constitution now before us. The opinion in Smith v. Thompson discloses the fact that the legislative act that was involved had the following history: Three bills originated in the House and after passing were received in the Senate. What occurred in the Senate after these bills were received and referred to the sifting committee is not definitely shown; that it is fair to assume that there was prepared and presented to the Senate a substitute for these three bills, the substitute being known in the record as Senate File No. 479. The opinion further discloses that nowhere in the record does it appear that the House of Representatives ever voted upon Senate Bill No. 479, or that the ayes and nays were called and recorded on the question of the final adoption or passage of the act. The opinion recites that under the record it must be held that the act in question was never before the House for a yea and nay vote on its final adoption, and that the adoption of the fragmentary report of the conference committee did not suffice and did not meet the constitutional requirement that a vote "shall be taken immediately upon its last reading, and the yeas and nays entered on the journal." It was upon this finding as to the state of the record before the court that it was held that section 17 of article III had not been observed, and the act held unconstitutional. In the case at bar both houses had passed House File No. 1, and the fact situation determinative of Smith v. Thompson is not before us. It follows that the Smith case does not sustain plaintiff's contention.

■■ However, the case of Smith v. Thompson, supra, does sustain plaintiff's proposition that this court has adopted the rule that a bill may be attacked, although it bears the signatures of the officers of the Houses of Legislature and the Governor, and has been enrolled and filed with the Secretary of State, when it appears upon the face of the bill that it is violative of some constitutional provision, and that the bill may also be attacked, if its unconstitutionality does not appear upon its face, by proof of extrinsic facts showing that some mandatory constitutional requirement in its passage has not been complied with. In considering this case, we have followed this rule.

It is our conclusion that in the enactment of chapter 82 of the Acts of the Extraordinary Session of the Forty-fifth General

Assembly, chapter 329-F1, 1935 Code (section 6943-f1 et seq.), the legislature did not violate the provisions of section 17 of article III of the Constitution of Iowa, and that the judgment and decree of the district court must be and is affirmed.

It is ordered that appellant's motion, filed April 7, 1936, praying that funds in defendants' hands be held as a special trust fund, be and is overruled.—Affirmed.

DONEGAN, C. J., and PARSONS, KINTZINGER, MITCHELL, HAMILTON, and ALBERT, JJ., concur.

STIGER, J., taking no part.