STATE OF IOWA, Appellee, v. JOHN ARLUNO, Appellant.

No. 43488.

JUNE 19, 1936.

Valentine & Valentine, for appellant.

Edward L. O'Connor, Attorney General, Walter F. Maley, First Assistant Attorney General, Henry J. Roelofs, Special Assistant Attorney General, and Hugh G. Guernsey, County Attorney, for appellee.

KINTZINGER, J.—Defendant was accused by a county attorney's information of the crime of maintaining a liquor nuisance by keeping a place in Appanoose county, Iowa, on or about April 12, 1935, in which he unlawfully possessed and kept with intent to sell, use, or give away, intoxicating liquors contrary to the provisions of section 54, chapter 24, 45th General Assembly, Extra Session (Code 1935, section 1921-f61). He plead not guilty to the offense charged, and in November, 1935, the case was tried to a jury, which returned a verdict of guilty. At the close of the evidence, defendant filed a motion for a directed verdict, which was overruled. Thereupon, he filed a motion for a new trial, which was also overruled; judgment was pronounced and defendant was fined $300, from which he appeals.

The evidence shows without dispute that during the week prior to April 12, 1935, the constable of Centerville, Iowa,

placed the defendant's home, located in the outskirts of Centerville, in Appanoose county, Iowa, under observation. The officer observed that many cars came to defendant's home during that time, and in the evenings many persons made many trips between defendant's house and garage, about 40 feet away. On the afternoon of April 12, 1935, the Chief of police of Centerville, the constable, and several other officers, raided defendant's place, and made a search of his home and garage, in defendant's presence. The searching party found on the premises two bottles of wine, 11 full bottles of intoxicating liquor bearing no State stamps, and 8 or 10 cases of empty bottles, most of them bearing whiskey and gin labels, the labels on some of the bottles being washed off. The empty whiskey bottles were found underneath the house. The liquor was found in a specially constructed receptacle or "cache" under the cement floor of the garage with a 6 or 7 inch lid on the top, to which was attached a wire or staple to remove the lid. This receptacle was a 40 or 50 gallon steel drum, in which the liquor was found. The officers found the opening by raking straw from around the top. They also found another opening constructed entirely of cement.

The defendant attempts to explain the presence of the liquor by stating that in October, 1934, he had been running a beer joint called the "Caseloma" in Unionville, Missouri, where he was legally authorized to buy and sell liquor; that he bought all of the liquor found on his premises in Iowa at a drug store in Unionville, Missouri, while he was conducting the beer joint at that place.

He further testified that he became ill after running the "Caseloma" for about two months, and decided to return to his former home at the outskirts of Centerville, Iowa; that his employee moved this liquor with the balance of his property when he moved to Iowa; that when the liquor was brought to his place in Iowa, it was put in the place where it was found in the garage, because he expected to return to Missouri in a few months. He says the empty bottles also came from Missouri.

The foregoing is the substance of all the evidence offered in the case.

While there is no positive evidence of any sales having been made in Iowa, the defendant, who took the witness stand in his own behalf, did not deny it; neither did he deny any intention to sell any of the liquor in Iowa. The record shows without con-

flict that the liquor found in the cache on his premises was intoxicating, and that the bottles contained no Iowa State liquor seals, and that it was transported into Iowa by him from Missouri.

I. One of the grounds urged for a reversal is that the State failed to show that defendant was guilty of any intent to sell intoxicating liquor contrary to the provisions of section 54, chapter 24, of the 45th General Assembly, Extra Session, known as the Iowa Liquor Control Act.

■■■ Appellant contends the evidence was insufficient to establish any intent by the defendant to use, sell, keep or give away liquor "contrary to the Iowa Liquor Act," and that the mere possession of liquor does not make out a prima facie case, as contemplated by section 1966-a1, Code of Iowa 1935, which provides that:

"In all actions * * * under the provisions of this title, the finding of intoxicating liquors * * * in the possession of or under the control of any person, under and by authority of a search warrant * * *, and which shall have been finally adjudicated and declared forfeited by the court, shall be prima facie evidence, * * * of maintaining a nuisance * * * by such person."

It is strenuously urged that because the liquor, found in the possession of the defendant, was not "finally adjudicated and declared forfeited" by the court, the mere possession of it does not made out a prima facie case; and that the evidence introduced was not competent or sufficient to establish his guilt of the crime charged.

We have held, however, that the absence of an adjudication and declaration of forfeiture of the liquor, is not a condition precedent to the introduction of evidence tending to show a violation of the liquor law. This question was directly passed upon in State v. Boever, 203 Iowa 86, 210 N. W. 571, 572, where the same contention was made as in the case at bar. In that case, loc. cit. 88, we said:

"It is contended by the appellant that the seized liquor was not competent evidence and admissible against him, for the reason that said liquor had not been adjudicated to be intoxicating liquor and declared forfeited by the court issuing the search warrant. This claim is untenable. It is true that, under the provisions of chapter 42, acts of the Forty-first General As-

sembly, the finding of intoxicating liquor in the possession of or under the control of any person, under and by authority of a search warrant, 'and which shall have been finally adjudicated and declared forfeited by the court, shall be prima facie evidence, in any action, * * *' under the provisions of Title VI of the Code * * *. This statute provides a rule of evidence relating to the effect of the possession of liquor that has been seized and adjudicated as intoxicating, *but it does not contemplate that the facts and circumstances with reference to the execution of a search warrant, in the absence of an adjudication and forfeiture, shall not be admissible in a criminal prosecution.* In other words, an adjudication and forfeiture is not a condition precedent to the introduction of testimony in a criminal case involving the violation of the prohibitory liquor law." (Italics ours.)

Under the rule announced in the foregoing and other cases, it is the settled law in this state that evidence similar to that introduced in this case is competent on the question of establishing defendant's intent, and sufficient to make that question one for the jury. State v. Fountain, 183 Iowa 1159, 168 N. W. 285; State v. Butler, 186 Iowa 1247, 173 N. W. 239; State v. Shackleford, 198 Iowa 752, 200 N. W. 192; State v. Olson, 200 Iowa 660, 204 N. W. 278; State v. Boever, 203 Iowa 86, 210 N. W. 571; State v. Salisbury, 209 Iowa 139, 227 N. W. 589; State v. Campbell, 209 Iowa 519, 228 N. W. 22; State v. Bruns, 211 Iowa 826, 232 N. W. 684; State v. Harrington, 220 Iowa 1116, 264 N. W. 24.

Section 1921-f3 of the Iowa Liquor Control Act makes it "unlawful to * * * sell, offer or keep for sale, possess and/or transport * * * alcoholic liquor * * * except upon the terms, conditions, limitations and restrictions as set forth" in the act.

Some restrictions among others are those contained in section 1921-f1, which give the Iowa Liquor Control Commission exclusive authority to purchase liquor for the purpose of resale; also those in section 1921-f22, which prevent a resale of such liquor to any person not a permit holder; also those in section 1921-f24, which prevent the sale except in containers bearing a state liquor seal.

 As hereinabove disclosed, the record in this case shows without dispute that the defendant had in his possession a large amount of liquor, not purchased from the Iowa State Liquor

Commission, containing no Iowa liquor seals, and unlawfully transported into the State of Iowa.

It is our conclusion that the possession of such liquor by the defendant under the circumstances disclosed constitutes sufficient circumstantial evidence from which the jury could. say whether or not the necessary criminal intent to keep the same contrary to and in violation of the Iowa Liquor Control Act was established.

■■■ II. Defendant also contends that the court erred in giving certain instructions to the jury under which they were authorized to find a conviction without being required to find that defendant had any intent to keep, sell, or give away liquor *"contrary to the Iowa Liquor Law."* Defendant's theory being that the defendant under the instruction might be found guilty without a showing that he had any intent to violate the Iowa Liquor Law. As the same attack is made against several instructions, we will set out a few of those given:

Instruction No. 5 says:

"The essential elements of the crime charged are: That the defendant * * * did in Appanoose County * * * on or about the 12th day of August, 1935, or within three years next preceding * * * keep a building, erection or place, * * * in which he unlawfully possessed and kept with intent to sell, use or give away intoxicating liquor, substantially as charged in the information."

Instruction No. 9 says:

"In order * * * to secure a conviction in this case it (the State) must establish by the evidence beyond a reasonable doubt both of the following propositions:

"1. That the defendant did at the time charged in the information, * * * keep and maintain a building or place in Appanoose. County, * * * in which he possessed intoxicating liquors.

"2. That the purpose of said possession * * * if any, was with intent to sell, use or give the same away.

"If the State has so established both of said propositions, you will find the defendant guilty. But if the State has failed to so establish either of said propositions, you will acquit the defendant."

Instruction No. 12 says:

"Nor is the State required to prove that the intoxicating liquors found * * * were being kept with intent to sell the same at said place. It is sufficient if you find that said intoxicating liquors were kept by the defendant in the place described in the information with intent to sell, use or give the same away even though the illegal purpose was to be consummated at some other place."

Instruction No. 15 says:

"Evidence has been introduced * * * to show that the defendant acquired said liquors while engaged in business in * * * Missouri, and moved them to Centerville upon retiring from said business. In this connection you are instructed that the fact, * * * that the defendant acquired said liquors in the State of Missouri would be no defense in this case, if you find from the evidence beyond a reasonable doubt that the defendant maintained a building or place in Appanoose County, Iowa, in which he kept said liquors with intent to sell, use, or give the same away in violation of the law of this State. But if you fail to find beyond a reasonable doubt that the defendant maintained a building or place in which he kept intoxicating liquors, as hereinabove defined, with intent to sell, use or give the same away, then you should acquit the defendant."

The chief complaint against the instructions given is that they are alleged to contain no statement that it was necessary for the jury to find both that the liquor in question was (1) *"unlawfully kept"* and (2) that it was kept with the *"unlawful intent"* to use, sell, or give it away contrary to law.

It is the well settled rule of law in this State that all instructions given must be construed together. An examination of Instruction No. 1 shows that the defendant was accused of the crime of a liquor nuisance in "that (he) did keep a building * * * or place * * * in which he unlawfully possessed and kept *with intent to sell, use or give away intoxicating liquor, contrary to the provisions of Sec. 54, Chap. 24, of the Acts of the 45th General Assembly of the State of Iowa, Ex. Sess."*

Instruction No. 2 said, among other things:

"The proof must conform substantially to the material

averments of the information, and must establish * * * the guilt of the defendant beyond a reasonable doubt.''

This instruction clearly admonishes the jury that the proof must conform *to the material averments of the information.* The *averments* of the information as set out in Instruction No. 1 are that the defendant unlawfully possessed liquor *"with intent* to sell, use or give it away *contrary to the provisions of Sec. 54, Chap. 24, of the Acts of the 45th General Assembly, Ex. Sess."*

Again in Instruction No. 5, the court specifically says:

''The essential elements of the crime charged are that the defendant * * * unlawfully possessed and *kept with intent to sell, use or give away intoxicating liquor, substantially as charged in the information.''*

When all of the instructions are construed together, it is obvious they can have no other meaning than that, in order to warrant a conviction, the jury must find that the defendant (1) unlawfully possessed liquor, and (2) that such possession was *with the intent to sell, use or give it away,* ''contrary to the provisions of Sec. 54, Chap. 24, of the Acts of the 45th General Assembly, Ex. Sess.''

For these reasons we are constrained to hold there was no error in the giving of the instructions complained of.

■■■ III. Defendant also contends that the court erred in refusing to direct a verdict on the alleged ground that the Iowa Liquor Control Act was unconstitutional, because it was not adopted in accordance with the provisions of Sec. 17 of Art. III of the Constitution, which provides as follows:

''No bill shall be passed unless by the assent of a majority of all the members elected to each branch of the General Assembly, and the question upon the final passage shall be taken immediately upon its last reading, and the yeas and nays entered on the journal.''

The Iowa Liquor Control Act, known as Chapter 24, of the 45th General Assembly, Ex. Sess., and Chapter 93-F1 of the Code of 1935, was originally introduced in the House as House File No. 292. This bill, as amended, was duly passed by the necessary constitutional majority, by a yea and nay vote, in the

House on January 10, 1934, when it was messaged to the Senate. The same bill, House File No. 292, after being amended in the Senate, was duly passed in the Senate on February 19, 1934, by the necessary constitutional majority, on a yea and nay vote. After being returned to the House, the amendments added by the Senate were not concurred in. The bill was then referred by both the House and the Senate to a joint conference committee. Thereafter, on February 27, 1934, the report of the joint conference committee was duly adopted in the House, and the amendments therein proposed were concurred in by the necessary constitutional majority, and on a roll call of the yeas and nays, the House adopted the conference committee report and concurred in the amendments proposed therein by the necessary constitutional majority. Thereafter, on March 1, 1934, the report of the joint conference committee was duly adopted in the Senate, and the amendments therein proposed were concurred in by the necessary constitutional majority, and on a roll call of the yeas and nays, the Senate adopted the conference committee report and concurred in the amendments proposed therein by the necessary constitutional majority. The bill was thereupon enrolled and duly signed by the Governor on March 12, 1934.

Appellant contends that this Act was not passed in accordance with the constitutional provision hereinabove referred to, and that the ruling in this case is governed by the case of Smith v. Thompson, 219 Iowa 888, 258 N. W. 190, 197. As pointed out in that case, however, this court said, loc. cit. 900:

"Under the record before us, it must be held that the act in question was never before the House for an aye and nay vote on its final passage, and that the adoption of the fragmentary report of the conference committee did not suffice and did not meet the constitutional requirement that a vote 'shall be taken immediately upon its last reading, and the yeas and nays entered on the journal.' "

With reference to the case of Smith v. Thompson, supra, this court, in the recent case of Scott v. State Board of Assessment and Review, 221 Iowa 1060, 267 N. W. 111, 114, said, loc. cit. 1065, 1066:

"In this latter case there was involved the question whether chapter 89 of the Laws of the Forty-fifth General Assembly had

been enacted by the General Assembly in a constitutional manner. The opinion, after holding the Act unconstitutional * * *, proceeds to consider the * * * question whether the legislature in passing the act had observed section 17 of article III * * * of the Constitution now before us. The opinion in Smith v. Thompson discloses the fact that the legislative act * * * involved had the following history: Three bills originated in the House and after passing were received in the Senate. What occurred in the Senate after these bills were received and referred to the sifting committee is not definitely shown; that it is fair to assume that there was prepared and presented to the Senate a substitute for these three bills, the substitute being known in the record as Senate File No. 479. The opinion further discloses that nowhere in the record does it appear that the House of Representatives ever voted upon Senate Bill No. 479, or that the ayes and nays were called and recorded on the question of the final adoption and passage of the act. The opinion recites that under the record it must be held that the act in question was never before the House for a yea and nay vote on its final adoption, and that the adoption of the fragmentary report of the conference committee did not suffice and did not meet the constitutional requirement that a vote 'shall be taken immediately upon its last reading, and the yeas and nays entered on the journal.' It was upon this finding as to the state of the record before the court that it was held that section 17 of article III had not been observed, and the act held unconstitutional. In the case at bar both Houses had passed House File No. 1, and the fact situation determinative of Smith v. Thompson is not before us. It follows that the Smith case does not sustain plaintiff's contention.''

Likewise in the present case both Houses had passed House File 292 and the fact situation determinative of Smith v. Thompson is not before us.

The legislative procedure, as shown by the record in this case, shows without dispute that the bill passed by both Houses was House File No. 292, and that this bill was duly adopted by a constitutional majority by the yea and nay vote of both Houses on its final passage. Our decision of the case at bar is, therefore, controlled by the case of Scott v. State Board of Assessment and Review, supra. The procedure in the present case is identical, except as to dates, with the procedure followed

in Scott v. State Board of Assessment and Review. The reasons given for the ruling in that case are fully considered therein, and a further review thereof is deemed unnecessary here. A reference thereto is deemed sufficient.

We are, therefore, constrained to hold that the adoption of Chap. 24 of the Acts of the 45th General Assembly, Ex. Sess., known as the Iowa Liquor Control Act, was duly enacted in compliance with the provisions of Sec. 17, Art. III, of the Constitution of Iowa.

█▌█ IV. Defendant also contends that the court erred in refusing to direct a verdict for defendant because the Liquor Control Act violates the due process, equal protection, and commerce clauses of the Federal Constitution (Amendment 14; Art. I, Sec. 8, cl. 3). He contends that because the liquor in his possession was legally purchased in the State of Missouri, that he cannot be deprived of his rights therein, or be guilty of a crime by removing it to another state. He admits that his rights in the liquor can only be affected by the legislature of this State, acting through its police powers, but insists that it is not a proper exercise of its police powers to make the possession of liquor legally bought in a sister state, and his possession of it in this State, evidence of an unlawful intent, while the possession of liquor bought from the Liquor Commission of this State is not such evidence.

He contends that by the reservation of the power to import liquor into this State by the Iowa Liquor Control Commission, and a refusal to permit liquor to be imported by a person lawfully owning and possessing the same in a sister state is a violation of the Interstate Commerce clause of the Federal Constitution.

It is the well settled rule of law in this and other states that the legislature of any state has the power to enact such laws as it desires, unless such powers are limited by its own or the Federal Constitution. The Iowa Liquor Control Act is not vulnerable to an attack on the ground that it violates any of the provisions of the State Constitution. No such limitation is pointed out by appellant, and we can find none.

It is claimed, however, that it violates the equal protection clause of the Fourteenth Amendment to the Federal Constitution and the commerce clause of Art. I, Sec. 8, of the Federal Constitution. A statute prohibiting the manufacture and sale of

liquor as a beverage is a lawful exercise of police power. Such a statute, although it may deprive persons of the right to pursue a business which was previously lawful, cannot be said to deprive them of their liberty or property without due process of law. Nor does it, for similar reasons, violate the prohibition against impairing the obligation of contracts, nor that which forbids discrimination against citizens of other states or citizens of the United States. 33 Corpus Juris, 510, Sec. 39; Drake v. Kaiser, 73 Iowa 703, 36 N. W. 652; Dickinson v. Herb Brewing Co., 73 Iowa 705, 36 N. W. 651; Kaufman v. Dostal, 73 Iowa 691, 36 N. W. 643; McLane v. Leicht, 69 Iowa 401, 29 N. W. 327; Mugler v. Kansas, 123 U. S. 623, 8 S. Ct. 273, 31 L. Ed. 205; Kidd v. Pearson, 128 U. S. 1, 9 S. Ct. 6, 32 L. Ed. 346; State v. Express Co., 164 Iowa 112, 145 N. W. 451.

"The matter of regulating and restraining the liquor traffic, being referable to the police power—a power that has resided in the states since the beginning of the present system of government, and was not surrendered to the Federal Government— it is held that the entire business of manufacturing and selling liquor is completely within the control of the state, and is said so to exist as a correlative of the state's duty to support paupers, to protect the community from crime, and to confine and maintain the criminal, since the liquor traffic is one source of pauperism and crime. By virtue of this power the state may regulate the mode and manner and the circumstances under which this traffic may be conducted, and may surround the right to pursue it with such conditions, restrictions, and limitations as the legislature may deem proper, or it may prohibit it entirely." 15 R. C. L. 255, Sec. 10.

The enactment of the Iowa Liquor Control Act is declared to be an exercise of the state's police power.

Sec. 1921-f1 of the Act provides:

"This Chapter * * * shall be deemed an exercise of the police power of the State, for the protection of the welfare, health, peace, morals and safety of the people of the State, and all its provisions shall be liberally construed for the accomplishment of that purpose, and it is declared to be the public policy that the traffic in alcoholic liquors is so affected with a public interest that it should be regulated to the extent of prohibiting

all traffic in them, except as hereinafter provided * * * through the medium of an Iowa Liquor Control Commission * * *, in which is vested the sole and exclusive authority to purchase alcoholic liquors, as defined herein, for the purpose of resale."

Section 1921-f3 provides:

"It shall be unlawful to manufacture for sale, sell, offer or keep for sale, possess and/or transport * * * alcoholic liquor, * * * *for any purpose whatsoever*, except upon the terms, conditions, limitations and restrictions as set forth herein."

Such restrictions prohibit the sale to or purchase by any person not a "permit holder". Sec. 1921-f22.

The restrictions also prohibit all sales, unless the liquor is contained in a sealed container with the official seal of the Iowa Liquor Commission thereon. Sec. 1921-f24.

Sec. 1921-f54 vests the exclusive control of the liquor business in the Iowa Liquor Control Commission, *and prohibits the importation thereof into the state by all other persons.*

The Iowa Liquor Control Act places the absolute control of the sale of intoxicating liquors in the Iowa Liquor Control Commission, and no one else is permitted to buy or sell such liquors, except by or through it. Nor is anyone permitted to "sell, keep for sale, possess or transport" any liquor, except under the provisions of that Act. No provision of the Iowa Constitution has been called to our attention, and we are unable to find any, which in any manner limits or restricts the authority of the legislature to enact the law in question.

It may be conceded that prior to the adoption of the Wilson Act (27 USCA, section 121) and the Webb-Kenyon Act (27 USCA, section 122 and note) by Congress, state prohibitory laws were in some instances held invalid as contravening the provisions of the due process and commerce clauses of the Federal Constitution. The rules announced in such cases, however, were greatly restricted and modified by the enactment of the Wilson Act and the Webb-Kenyon Act.

The Webb-Kenyon Act, adopted by Congress under the constitutional provisions relating to interstate commerce, provides:

"That the shipment or transportation, in any manner or by any means whatsoever, of * * * intoxicating liquor of any kind, from one State * * *, into any other, * * * or from any foreign

14

country into any State, * * * of the United States, * * * which * * * intoxicating liquor is intended, by any person interested therein, to be received, possessed, sold, or * * * used, either in original package or·otherwise, *in violation of any law of such State, * * * is hereby prohibited.''

It is now the well settled rule of law, however, that a prohibitory or regulatory liquor act does not violate any of the provisions of the Federal Constitution. State v. Express Co., 164 Iowa 112, 145 N. W. 451; State v. Zimmerman, 78 Iowa 614, 43 N. W. 458; State v. Rhodes, 90 Iowa 496, 58 N. W. 887, 24 L. R. A. 245; Crane v. Campbell, 245 U. S. 304, 38 S. Ct. 98, 62 L. Ed. 304; Delamater v. South Dakota, 205 U. S. 93, 27 S. Ct. 447, 51 L. Ed. 724, 10 Ann. Cas. 733; Clark Distilling Co. v. Western Maryland Ry. Co., 242 U. S. 311, 37 S. Ct. 180, 61 L. Ed. 326, L. R. A. 1917B, 1218, Ann. Cas. 1917B, 845; United States v. Hill, 248 U. S. 420, 39 S. Ct. 143, 63 L. Ed. 337; Crowley v. Christensen, 137 U. S. 86, 11 S. Ct. 13, 34 L. Ed. 620; Seaboard Air Line Ry. v. North Carolina, 245 U. S. 298, 38 S. Ct. 96, 62 L. Ed. 299; State of West Virginia v. Adams Express Co. (C. C. A.), 219 Fed. 794, L. R. A. 1916C, 291; Laughter & Fisher v. McLain (D. C.), 229 Fed. 280.

In State v. Express Co., 164 Iowa 112, loc. cit. 137, 145 N. W. 451, 460, this court said:

''There is no absolute right to sell liquors, in any state. That is a matter of police regulation, and the act of Congress neither gives nor protects that right. In Crowley v. Christensen, 137 U. S. 86, 11 S. Ct. 13, 34 L. Ed. 620, the Supreme Court of the United States said: 'The statistics of every state show a greater amount of crime and misery attributable to the use of ardent spirits obtained at these retail liquor saloons than to any other source. The sale of such liquors has therefore been, at all times, by the courts of every state, considered as the proper subject of legislative regulation. The police power of the state is fully competent to regulate the business * * * to mitigate its evils or to suppress it entirely. There is no inherent right in a citizen to thus sell intoxicating liquors by retail; it is not a privilege of a citizen of the state or of a citizen of the United States. As it is a business attended with danger to the community, it may, as already said, be entirely prohibited, or be permitted under such conditions as will limit to the utmost its evils.'

"It is manifest, of course, that under the act no one is deprived of his property without due process of law. Eilenbecker v. District Court, 134 U. S. 31, 10 S. Ct. 424, 33 L. Ed. 801; Barbier v. Connolly, 113 U. S. 27, 5 S. Ct. 357, 28 L. Ed. 923.

"We cannot better close this discussion than to quote the following from the Supreme Court of Delaware, found in State v. Grier, [4 Boyce (27 Del.) 322] 88 A. [579] 602, et seq.:

" 'The history of legislation, as well as of decisional law, upon the subject, is interesting. The "License Cases" held that the sale of interstate intoxicating liquor might be prohibited by the state even in the absence of a federal law. Subsequently the Supreme Court decided that the state could not prevent such sale in original packages. Later the Wilson act was passed, and the court held it to be constitutional, and that it gave the state the right to prohibit the sale of an interstate shipment of intoxicating liquor, even in the original package, after arrival at destination.

" 'That was the purpose and extent of the Wilson act, as interpreted by the Supreme Court. The Webb-Kenyon act was passed to supply the deficiency in the Wilson law, and make the transportation, as well as the sale, of interstate intoxicating liquors subject to state law. Such a law was necessary to give the state the right to prevent a traffic in an article which the legislature believed to be detrimental to the health and welfare of its citizens. We think the Federal statute should be broadly and reasonably construed, so as to protect the state in the exercise of such right, and we further think that such a construction would not be in conflict with the principle of any decision heretofore made by the Supreme Court, under the commerce clause of the Constitution of the United States. Indeed, we are satisfied that such a construction would be in harmony with the principle and reasoning of all the decisions of said court upon the subject since the passage of the Wilson act. * * * Congress may, under its power to regulate commerce between the states, supplement, and in effect ratify, the prohibitory laws of the state, by extending the prohibition to interstate shipments. * * * The prohibition of the transportation of intoxicating liquor is considered, when supplemented and reinforced by an act of Congress, as taking from intoxicating liquors their character of interstate commerce, and placing them in the same category as lottery tickets, oleomargarine, deleterious drugs, the interstate trans-

portation of which may unquestionably be prohibited. * * * Congress has now spoken, and declared that imported liquors * * * shall, upon arrival in a state, fall within the category of domestic articles of a similar nature. * * * No reason is perceived why, if Congress chooses to provide that certain designated subjects of interstate commerce shall be governed by a rule which divests them of that character * * *, it is not within its competency to do so.' "

The Supreme Court of the United States, in discussing this question in Crane v. Campbell, 245 U. S. 304, loc. cit. 307, 38 S. Ct. 98, 99, 62 L. Ed. 304, says:

"The question presented for our determination is whether the Idaho statute, in so far as it undertakes to render criminal the mere possession of whiskey for personal use, conflicts with that portion of the Fourteenth Amendment which declares 'no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property without due process of law.' Its validity under the state constitution is not open for our consideration; with its wisdom this court is not directly concerned.

"It must now be regarded as settled that, on account of their well-known noxious qualities and the extraordinary evils shown by experience commonly to be consequent upon their use, a state has power absolutely to prohibit the manufacture, gift, purchase, sale, or transportation of intoxicating liquors within its borders without violating the guarantees of the Fourteenth Amendment. Bartemeyer v. Iowa, 18 Wall. 129, 21 L. Ed. 929; Boston Beer Company v. Massachusetts, 97 U. S. 25, 33, 24 L. Ed. 989; Mugler v. Kansas, 123 U. S. 623, 662, 8 S. Ct. 273, 31 L. Ed. 205; Crowley v. Christensen, 137 U. S. 86, 91, 11 S. Ct. 13, 34 L. Ed. 620; Purity Extract Co. v. Lynch, 226 U. S. 192, 201, 33 S. Ct. 44, 57 L. Ed. 184; Clark Distilling Co. v. Western Maryland Ry. Co., 242 U. S. 311, 320, 321, 37 S. Ct. 180, 61 L. Ed. 326, L. R. A. 1917B, 1218, Ann. Cas. 1917B, 845. * * *

"As the State has the power as above indicated to prohibit, it may adopt such measures as are reasonably appropriate or needful to render exercise of that power effective. Booth v. Illinois, 184 U. S. 425, 22 S. Ct. 425, 46 L. Ed. 623; Silz v.

Hesterberg, 211 U. S. 31, 29 S. Ct. 10, 53 L. Ed. 75; Murphy v. California, 225 U. S. 623, 32 S. Ct. 697, 56 L. Ed. 1229, 41 L. R. A. (N. S.) 153; and Rast v. Van Deman & Lewis Co., 240 U. S. 342, 364, 36 S. Ct. 370, 60 L. Ed. 679, L. R. A. 1917A, 421, Ann. Cas. 1917B, 455. And, considering the notorious difficulties always attendant upon efforts to suppress traffic in liquors, we are unable to say that the challenged inhibition of their possession was arbitrary and unreasonable or without proper relation to the legitimate legislative purpose."

In Delamater v. South Dakota, 205 U. S. 93, 27 S. Ct. 447, 448, 51 L. Ed. 724, 10 Ann. Cas. 733, the court, in discussing the same question with reference to the Wilson Original Package Act, said:

"That Act, as we have seen, manifested the conviction of Congress that control by the states over the traffic of dealing in liquor within their borders was of such importance that it was wise to adopt a special regulation of interstate commerce on the subject. When, then, for the carrying out of this purpose the regulation expressly provided that intoxicating liquors coming into a state should be as completely under the control of a state as if the liquor had been manufactured therein, *it would be * * * a disregard of the purposes of Congress to hold that the owner of intoxicating liquors in one state can, by virtue of the commerce clause, go himself or send his agent into such other state, there in defiance of the law of the state,* to carry on the business of soliciting proposals for the purchase of intoxicating liquors. * * * (Italics ours.)

"But, as by the Wilson Act, the power of South Dakota attached to intoxicating liquors, when shipped into that state from another state after delivery but before the sale in the original package, so as to authorize South Dakota to regulate or forbid such sale, it follows that the regulation by South Dakota of the business carried on within its borders of soliciting proposals to purchase intoxicating liquors, even though such liquors were situated in other states, cannot be held to be repugnant to the commerce clause of the Constitution, because directly or indirectly burdening the right to sell in South Dakota, a right which by virtue of the Wilson-Act did not exist."

In Clark Distilling Co. v. Western Maryand Ry. Co., 242

U. S. 311, loc. cit. 324, 37 S. Ct. 180, 184, 61 L. Ed. 326, L. R. A. 1917B, 1218, Ann. Cas. 1917B, 845, the Supreme Court of the United States, in discussing the Webb-Kenyon Act, said:

"The case in this court relied upon to establish the contrary (Adams Express Co. v. Kentucky, 238 U. S. 190, 35 S. Ct. 824, 59 L. Ed. 1267, L. R. A. 1916C, 273, Ann. Cas. 1915D, 1167) clearly does not do so. All that was decided in that case was that as the court of last resort of Kentucky into which liquor had been shipped had held that the state statute did not forbid shipment and receipt of liquor for personal use, therefore the Webb-Kenyon Act did not apply, since it only applied to things which the state law prohibited. * * * But the shipment was held to be protected as interstate commerce despite the state prohibition because the Webb-Kenyon Law was not correctly applied, for the following reason: Coming to consider the text of that law, the court said that as the Webb-Kenyon Act prohibited the shipment of intoxicants 'only when the liquor is intended to be used in violation of the law of the state,' and as the liquor shipped was intended for personal use, which was not forbidden, therefore the shipment, although prohibited by the state law, was beyond the reach of the Webb-Kenyon Act. But we see no ground for following the ruling thus made since, as we have already pointed out, it necessarily rested upon an entire misconception of the text of the Webb-Kenyon Act, because that act did not simply forbid the introduction of liquor into a state for a prohibited use, *but took the protection of interstate commerce away from all receipt and possession of liquor prohibited by state law.* (Italics ours.)

"The movement of liquor in interstate commerce and the receipt and possession and right to sell prohibited by the state law having been in express terms divested by the Webb-Kenyon Act of their interstate commerce character, it follows that if that act was within the power of Congress to adopt, there is no possible reason for holding that to enforce the prohibitions of the state law would conflict with the commerce clause of the Constitution."

In that case, the court, in discussing the constitutionality of the Webb-Kenyon Act, said, loc. cit. 332:

"It is only necessary to point out that the considerations

which we have stated dispose of all contentions that the Webb-Kenyon Act is repugnant to the due process clause of the Fifth Amendment, since what we have said concerning that clause in the Fourteenth Amendment as applied to state power is decisive.''

In addition to the Webb-Kenyon Act and the pronouncements of the courts thereunder, we now have a provision of the Federal Constitution itself known as the Twenty-first Amendment, which provides among other things that:

''The transportation or importation into any state, territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited.''

If there was formerly any doubt as to the correctness of the rules announced in the cases hereinabove cited under the Webb-Kenyon Act, that doubt is now completely removed by the foregoing amendment to the Constitution of the United States.

As the Iowa Liquor Control Act (Code 1935, sec. 1921-f3) makes it unlawful ''to manufacture for sale, *sell, offer or keep for sale, possess and/or transport* vinous, fermented, spirituous, or *alcoholic liquor* \* \* \* *for any purpose whatsoever, except upon the terms, conditions, limitations and restrictions as set forth*'' *therein,* it necessarily follows that under the Twenty-first Amendment to the Federal Constitution all importation of intoxicating liquor in violation of the Iowa law is forbidden. Consequently it also follows that appellant's contention that the Iowa Liquor Control Act violates the commerce clause of the Federal Constitution cannot prevail.

Without carrying the discussion any further, we are constrained to hold that the Iowa Liquor Control Act does not violate any of the provisions of the State or Federal Constitution.

For the reasons hereinabove expressed, the judgment of the lower court must be and is hereby affirmed.—Affirmed.

DONEGAN, C. J., and ALBERT, MITCHELL, STIGER, ANDERSON, PARSONS, HAMILTON, and RICHARDS, JJ., concur.