ETHEL I. GOODLOVE, Administratrix, Appellant, v. MARVIN LOGAN, Appellee.

No. 41912.

NOVEMBER 14, 1933.

Donnelly, Lynch, Anderson & Lynch, for appellant.

Bronson, Charlton & Kehoe, for appellee.

MITCHELL. J.—Wallace Harold Goodlove lived on a farm east and south of primary road No. 13 about 4 miles from Central City. On the evening of December 21, 1931, he started to town. Riding with him in his automobile were his wife and his only son. It was after dark, and the headlights and rear light on his car were burning. In order to reach primary highway No. 13, which is a paved road, they drove along three-fourths of a mile on a very muddy dirt road. When they reached primary highway No. 13, they turned north and drove about 120 rods, at which point Goodlove stopped his car to remove the muddy chains. The east wheels of his car were right at the easterly edge of the paved portion of the road. The pavement was 18 feet wide, and there was no curbing. The

shoulder to the right of the pavement was a dirt shoulder. It had been raining, and the ground at the side of the pavement was soft and muddy. Goodlove got out on the left side of the automobile and went to the left rear wheel and removed the chain. Then he stepped onto the east shoulder, off the pavement, and was standing to the east of his car, on the shoulder, between the door and the rear of the car, when the car driven by the appellee came up from the south on the pavement, struck the car driven by Goodlove a glancing blow on the rear right fender, and then struck Goodlove and dragged him for a distance of about 90 feet. Goodlove received injuries which caused his death within a few hours. The appellee's car, after striking Goodlove, traveled a distance of approximately 90 feet along the dirt shoulder of the road. After the accident the appellee, the driver of the car, walked back to the Goodlove car and said to Mrs. Goodlove: "Was there a man standing by your car?" She told him her husband was there. They then walked down to where the appellee's car was standing and found Goodlove under the car. He was taken to a nearby hospital, where he died a few hours later. Mrs. Goodlove was appointed administratrix of his estate and commenced this action to recover damages in the amount of $15,000. The appellee filed answer to the petition of the appellant, denied that he was negligent, claimed that the injuries were due to the said negligence of the said Goodlove, and also pleaded in his answer the following:

"That the said Wallace Harold Goodlove was negligent in that he did not comply with Rule No. 7 of the 'Rules, Regulations and Instructions Relative to Primary Roads and Traffic on Primary Roads' issued and adopted under the direction and authority of Section 5066 of the 1931 Code of Iowa by the Iowa State Highway Commission on June 10, 1931, and effective since said date, which rule and regulation reads as follows:

" 'VII. Stopping on Traveled Portion of Road. No vehicle shall stop on the traveled portion of any primary road except when such vehicle is disabled and unable to proceed without emergency repairs or change of tires.' "

The case proceeded to trial. The appellant offered her testimony, and the appellee offered in evidence, over objection of the appellant, the rules, regulations, and instructions relative to traffic on primary roads, of the Iowa state highway commission, said offer

being known as Exhibit No. 5, and offered separately that part of Exhibit No. 5 known as No. VII, which is as follows:

"VII. Stopping on Traveled Portion of Road. No vehicle shall stop on the traveled portion of any primary road except when such vehicle is disabled and unable to proceed without emergency repairs or change of tires."

This was admitted by the court over the objection of the appellant. The appellee offered no evidence other than Exhibit No. 5, and, at the close of the evidence, both sides having rested, the appellee moved the court for a directed verdict on the grounds that the appellant's decedent was guilty of contributory negligence; that the record failed to show the appellee was guilty of negligence, and showed that the appellant's decedent was guilty of negligence as a matter of law in stopping upon the paved highway. The court sustained the appellee's motion for directed verdict in the following language:

"The motion for directed verdict on the part of defendant is sustained upon the ground that the rule of the Highway Commission pleaded in an amendment to the answer makes it clear under the record that plaintiff's decedent was violating this rule of the road established by the Highway Commission and, therefore, guilty of negligence as a matter of law, and because it appears from the record that that negligence contributed in a substantial degree to the accident, injury and death of decedent."

And from the ruling of the court sustaining the motion for directed verdict, the appellant has appealed to this court.

There can be no question, from a careful examination of the record, but that there was sufficient evidence of negligence on the part of the appellee shown by the appellant to submit the case to the jury. Witnesses testified to statements made by the appellee as to the speed and manner in which he was driving. These are uncontradicted in the record. The question is raised whether or not the rear light on appellant's decedent's car was burning. The testimony of appellant and others, the record discloses, shows that it was burning. This testimony is also uncontradicted.

The real question in this case is whether or not the legislature of the state of Iowa had a right, under Code section 5066, to confer upon the highway commission the power and authority to pass and

establish rules and regulations set out in Exhibit 5 and especially No. VII of said rules and regulations. The material part of section 5066, chapter 251 of the 1931 Code of Iowa, is as follows:

"General Regulations—Violations. The state highway commission shall, for the protection of the highways and the safety of the traffic thereon, establish rules and regulations and issue orders relative to the use of the primary roads or any part thereof and of those portions of extensions of primary roads built and maintained by the state within cities and towns. Such rules and regulations may, where the matter is not otherwise covered by statute, relate to

1. * * *

2. * * *

3. The stopping of vehicles on the paved portion of the roadway, and the stopping of vehicles on any portion of primary roads for service at wayside markets or filling stations.

4. * * *

Failure to comply with such rules, regulations or orders shall be deemed a misdemeanor and shall be punishable accordingly."

It is the claim of the appellant that the legislature by Code section 5066 conferred upon the highway commission the right to establish rules and regulations regarding the stopping of vehicles on the paved portion of a highway; that this was an attempt on the part of the legislature to confer legislative functions upon the highway commission, and therefore was in violation of the state Constitution. Thus, we are confronted with the question of drawing the line between what is "administrative" as distinguished from "legislative" power. The distinction is not easily made, and we must look to the authorities for assistance.

In Cooley on Constitutional Limitations (5th Ed.) on page 139, the rule is expressed as follows:

"One of the settled maxims in constitutional law is, that the power conferred upon the legislature to make laws cannot be delegated by that department to any other body or authority. Where the sovereign power of the State has located the authority, there it must remain; and by the constitutional agency alone the laws must be made until the constitution itself is changed. The power to whose judgment, wisdom, and patriotism this high prerogative has been intrusted cannot relieve itself of the responsibility by choosing

other agencies upon which the power shall be devolved, nor can it substitute the judgment, wisdom, and patriotism of any other body for those to which alone the people have seen fit to confide this sovereign trust."

A very similar question was before the New Jersey court in State v. Larson, reported in 160 A. 556, 557, 10 N. J. Misc. 384. In that case the court sustained the defendant's challenge to the constitutionality of the statute under which the commission enacted the rules and regulations alleged to have been violated, and in that connection said:

"The substantial question therefore is whether the New Jersey Legislature is permitted by the Constitution of this state and that of the United States to convict a person of a crime, when it has fixed no standard of conduct to be conformed to by the citizen, but has left that standard to be fixed by the regulations of a subordinate administrative authority, either in its untrammeled discretion, or to conform substantially to the legislation of another sovereignty, such legislation being referred to in the act, but not incorporated therein.

"Our form of government, both federal and state, is based upon the fundamental concept of the separation of the powers, legislative, executive and judicial. Each of these three branches can exercise its own power only. This is expressly set forth in our state Constitution, which provides that 'the legislative power shall be vested in a senate and general assembly.' Article 4, section 1, par. 1. The only exception to this is in the case of municipal corporations, which from time immemorial have been authorized to exercise legislative functions at common law, such common-law rule and historical fact being deemed a condition implied in the Constitution. Otherwise, however, no legislative function can be delegated by our Senate and General Assembly.

"But, while the establishment of principles or standards of conduct is the essential function of the lawmaking body, which cannot be delegated, the application of those principles or standards to facts as they arise, and the determination as to whether or not those facts exist, is a function of law enforcement, which can therefore be delegated to an administrative body. This distinction is well brought out in the leading case of Field v. Clark, 143 U. S. 649, 12 S. Ct. 495, 505, 36 L. Ed. 294, where the court says:

" 'The legislature cannot delegate its power to make a law, but

it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend.' See further the comparatively recent case of Hampton, Jr., & Co. v. U. S., 276 U. S. 394, 48 S. Ct. 348, 72 L. Ed. 624, which collates the authorities generally in this regard. Accordingly, Congress in exercising legislative control over intrastate carriers by the fixing of general principles can yet delegate fact-finding and law-enforcing, i. e., rate-making, power to the Interstate Commerce Commission. Interstate Commerce Commission v. Illinois Central R. R., 215 U. S. 452, 30 S. Ct. 155, 54 L. Ed. 280. So again the state of New Jersey can delegate rate-making power to the State Public Utilities Commission. W. J. & S. Railroad v. Board of Public Utility Com'rs, 87 N. J. Law, 170, 94 A. 57. A delegation of power over transportation by air can, of course, be made similar to that over transportation by land or water.

"But this is exactly what the State Aviation Act fails to do. As seen above, it fixes no criterion whatever to be adhered to by the state aviation commission in establishing its regulations for 'uniform field rules.' In authorizing such regulations, it therefore violates the fundamental concept of our constitutional law as to the separation of the powers. It may well violate also the due process clause of the Fourteenth Amendment to the Federal Constitution, since it creates a crime, without setting up any ascertainable standard of conduct for the citizens to conform to. U. S. v. L. Cohen Grocery Co., 255 U. S. 81, 41 S. Ct. 298, 65 L. Ed. 516, 14 A. L. R. 1045."

A similar question was also before the Florida courts, and in the case of State v. Fowler, 94 Fla. 752, 114 So. 435 (1927), an act creating a state board of examiners of plumbers and purporting to authorize such board to establish, adopt, promulgate, and to put into effect a code governing the installation of plumbing was held an unconstitutional delegation of legislative power. The Florida court said: (p. 437)

"It may be stated that the paramount test as to whether or not a particular statute amounts to an invalid delegation of legislative power is the degree of completeness of the statute as it appears when it leaves the hands of the legislative body. The law must be so complete in all its terms and provisions when it leaves the legislative branch of the government that nothing is left to the

judgment of the delegate or appointee of the Legislature, and, where a statute passed by the Legislature is not complete as legislation, but authorizes an executive board or some other named authority to decide what should and what should not be deemed infringement of the law, it must be held unconstitutional as attempting to make an improper delegation of legislative power."

In Interstate Commerce Commission v. Goodrich Transit Co., 224 U. S. 194, 32 S. Ct. 436, 441, 56 L. Ed. 729, 737, the United States Supreme Court announced the following general proposition:

"The Congress may not delegate its purely legislative power to a commission, but, having laid down the general rules of action under which a commission shall proceed, it may require of that commission the application of such rules to particular situations and the investigation of facts, with a view to making orders in a particular matter within the rules laid down by the Congress."

In Field v. Clark, 143 U. S. 649, 694, 12 S. Ct. 495, 505, 36 L. Ed. 294, 310, it is said:

" 'The true distinction,' as Judge Ranney, speaking for the supreme court of Ohio [C. W. & Z. Railroad Co. v. Com., 1 Ohio St. 77, 88], has well said, 'is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made.' "

In In re Mellea (D. C.) 5 F. (2d) 687, 689, it is said:

"Did the making of the departmental regulation here in question come within the power conferred by the last-quoted statutory provision? It is settled law that while an executive tribunal or official may constitutionally be empowered by Congress to make such regulations as are reasonably necessary to the proper execution of a statute, so long as such regulations are merely administrative in character and relate only to the enforcement of the statute, yet such an executive tribunal or official cannot, constitutionally, either with or without the sanction of Congress, make any rule or regulation the effect of which would be to add to, take from, or otherwise change such statute, for that would be to permit the executive department to encroach upon and usurp the function of the

legislative department, to which alone belongs the power to legislate."

Turning now to the cases covering this proposition which this court has decided, the appellee cites four cases. In the case of Hubbell v. Higgins, 148 Iowa 36, on page 44, 126 N. W. 914, 917, Ann. Cas. 1912B, 822, this court says:

"The act under consideration does not purport to confer upon the inspector any arbitrary power. It does require him to determine in given cases whether a hotel is of 'fireproof construction.' If 'yea,' it is an approved fireproof construction within the meaning of the statute. If 'nay,' then otherwise. But this would not empower the inspector to say arbitrarily that a given hotel was not of 'fireproof construction' when in truth it was of such fireproof construction. Nor have we any doubt but that such an attempted act on the part of the inspector could be called in question by any aggrieved party by proper action in court. And the same may be said concerning the other analogous features of the act which we have already referred to."

Thus it will be seen that in the case just cited this was purely the granting of administrative power to determine the existence of certain facts, and did not purport to vest the inspector with power to determine what such regulation should be.

In the case of Lloyd v. Ramsay, 192 Iowa 103, 183 N. W. 333, there was involved purely an administrative function.

In the case of Hildreth v. Crawford, 65 Iowa 339, 21 N. W. 667, an act creating a pharmacy commission was challenged as invalid in delegating legislative power. The authority granted was the making of by-laws governing the discharge of the commission's duties. On page 343 of the opinion this court said:

"There are no legislative powers intrusted to the commissioners; they can neither make nor unmake a single provision of law. They are charged with the administration of the law, and with no other powers. While in the administration of the law they are intrusted with certain *quasi* judicial powers. They possess none except those of the class which the law confers upon ministerial and executive officers. They exercise discretion which may be *quasi* judicial, just as all officers do. The by-laws and regulations which they are authorized to make pertain to the *lawful discharge* of the duties im-

posed upon them. *They do not pertain to the rights or liabilities of other persons."*

. It is interesting to note that in the last cited case the by-laws and regulations which the commission was authorized to make pertained only to the lawful discharge of the duties imposed upon them. This court said: "They do not pertain to the rights or liabilities of other persons." Not so in the case at bar. The rule which the highway commission established pertained not to the highway commission but to every man and woman in the state of Iowa who drives an automobile upon the paved highways of this state.

In the case of McLeland v. Marshall County, 199 Iowa 1232, at page 1238, 201 N. W. 401, 403, 203 N. W. 1, it is said:

"It may be stated, in a general way, that it is for the legislature to determine what the law shall be, to create rights and duties, and provide a rule of conduct. This does not necessarily mean that the legislature must lay down a strict rule that must be followed by an administrative officer, but that an executive or commission may be vested by the legislative branch of the government with discretion, within certain limits, in carrying out the provisions of a statute."

And again on page 1240 of this same opinion this court said:

"It is said in 1 Sutherland on Statutory Construction, section 88:

" 'The true distinction is between the delegation of power to make the law, which involves a discretion as to what the law shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made.' "

Considering Code section 5066, under which rule VII was passed by the highway commission, under the test of the opinion last quoted, the legislature has not said to the commission that all stopping of vehicles on the highway shall be unlawful except at points and under conditions determined by the commission. It has not said there shall be any law on this subject. It has said that the commission may establish rules relating to the stopping of cars, etc.

. Thus, an analysis of every case cited by the appellant presents the situation only where the details of the statute are left to be administered by a board or commission in applying the law as ex-

pressed in the statute. If the legislature had a right to pass section 5066, granting to the highway commission the authority to adopt rules and regulations governing the stopping of cars upon a paved highway, the legislature can also empower the highway commission to pass rules and regulations governing the speed and right of way, and all duties of automobile drivers. If the legislature can delegate to the highway commission the right to do these things, then, of course, the legislature can delegate the same power to the board of control, to the insurance commissioner, superintendent of banking, and all other administrative departments of the state may be likewise empowered to enact rules and regulations to be given the force of statutes, which said commission might in their judgment determine to be for the general protection of the public. Once such bureaucracy has fastened itself into the life of legislative power, little else need be done by the legislature than to meet and create boards. The legislature has no such right to delegate to the highway commission legislative power to pass rules and regulations concerning the use of the primary highways of this state by the people of this state, such as rule VII. If the legislature in its wise judgment desires to pass such a statute, it, of course, has the right and authority to do so, for the legislature is composed of the representatives of the people; it is chosen by the people for the purpose of making the laws of this state. The legislature cannot transfer the power of making laws to any one else, or place the right to make laws anywhere but where the people have placed it. The highway commission is appointed by the Governor of the state for the purpose of administering the laws and not for the purpose of making the laws. If the right were given to the highway commission to make the laws governing the highways of this state, how is the individual using the highways to know what rules and regulations the highway commission passes? The highway commission meets at various and different times. It might pass some rule or regulation today and revoke it next week. There is no way that the people throughout this state could know just what were the rules and regulations that the highway commission adopted. About the only way that one could be certain as to what the rules and regulations were—if the highway commission had the right to pass them—would be to telephone to the highway commission every time one started on a journey, and, if that journey were to be a long one, a wise and cautious in-

dividual would put in a telephone call before starting on the return journey.

Thus, it seems to us that the legislature under Code section 5066 has left to the highway commission first to say whether there shall be any law, and, second, what that law shall be. This is a delegation of legislative power, and same is unconstitutional. Thus the court erred in directing the verdict, and the judgment of the lower court must be, and it is hereby, reversed.

ALBERT, C. J., and STEVENS, EVANS, ANDERSON, and KINT-ZINGER, JJ., concur.