OLIVER C. MILLER, Appellant, v. L. J. SCHUSTER et al., D. W. BATES, Superintendent of Banking, and STATE BANKING BOARD, Appellees; HOUSEHOLD FINANCE CORPORATION OF AMERICA, Intervener, Appellee.

No. 44799.

JANUARY 16, 1940.

H. Pierce Witmer and C. S. Missildine, for appellant.

Fred D. Everett, Attorney General, John E. Mulroney, and Floyd Philbrick, Assistant Attorneys General, for appellees.

Hubachek & Kelly and Brammer, Brody, Charlton & Parker, for intervener, appellee.

MILLER, J.—Plaintiff's petition alleges that he is licensed to make loans under $300 and is engaged in such business; that the defendants are members of the State Banking Board and as such threaten to enforce the provisions of chapter 419-f1 of the Code, 1935 [Ch. 419.1, C'39]. Plaintiff seeks an injunction, asserting that said chapter is invalid because the legislature failed to comply with mandatory provisions of the constitution in attempting to enact the legislation and further because subparagraph a-2 of section 9438-f13 of the Code, 1935 [9438.13 (1-b), C'39], contained in such chapter, constitutes an invalid delegation of legislative power. The Household Finance Corporation intervened, asserting that it is a licensee to make loans under $300, is engaged in such business, and has a vital interest in this litigation. The answers of the intervener and the defendants admitted certain allegations of the petition, denied others, and asserted that the legislation which plaintiff attacks does not violate the constitutional provisions specified by plaintiff.

At the trial it was stipulated that the plaintiff and the intervener are duly licensed under the laws of Iowa to make loans under $300, and are engaged in such business; that the defendants, as the State Banking Board, threaten, intend and expect to enforce chapter 419-f1 of the Code, 1935 [Ch. 419.1, C'39], intend to continue to collect and review information, statistics, facts and records pertaining to the small loan business for the purpose of determining and fixing the maximum rate of interest to be permitted under said chapter 419-f1 [Ch. 419.1, C'39]. There was introduced in evidence, a statement of Leon Henderson, formerly of the Russell Sage Foundation, which reviews the history and purpose of small loan legislation and regulation. Objections were made to its introduction. We find it unnecessary to discuss or decide the merits of such objections. There were also introduced the house and senate journals showing the steps taken to secure the enactment of H. F. 40 by the Forty-fifth General Assembly, Extra

Session, which statute is now known as chapter 419-f1 of the Code, 1935 [Ch. 419.1, C'39].

The court found that provision for a method and system of regulation and control of the small loan business for the protection of a borrower of money from illegal, extortionate acts and demands on the part of the lender constitutes a proper field for legislation, that the chapter attacked herein was constitutionally enacted and the provisions of said chapter do not constitute improper delegation of legislative power. The legislation was sustained, injunction denied, and decree entered accordingly. From such decree plaintiff appeals.

 I. Appellant does not seriously dispute the correctness of the court's holding that regulation and control of the small loan business is a proper field for legislation. We are in accord with the supreme court of Indiana, which recently sustained an act of the Indiana legislature, substantially identical with the act here challenged, in the case of Finance Aid Corp. v. Wallace (Ind. Sup.) 23 N. E. 2d 472, decided November 14, 1939, wherein the court states, at page 476:

"In the enactment of a regulatory law the Legislature has in mind the evils to be prevented or corrected and the purpose to establish safeguards for the protection of citizens. Doubtless the knowledge of the history of Shylock operations in this state convinced the Legislature of the necessity of the provisions of the 1933 act. It cannot be doubted that some persons took an undue and illegal advantage of those in need of funds."

 II. In support of his contention that chapter 419-f1 of the Code, 1935 [Ch. 419.1, C'39], is invalid because the legislature failed to comply with the mandatory provisions of the constitution in the course of its enactment, appellant relies upon our holding in the case of Smith v. Thompson, 219 Iowa 888, 906, 258 N. W. 190, 200, wherein we state:

"We are firm in the judgment that any mandatory provision of the constitution should not be annulled by judicial pronouncement, and the holding must be that the act in question in the case at bar is unconstitutional and invalid. We are of the opinion that the rule should be that an enrolled bill which bears the signature of the presiding officers of both houses and the governor, and filed in the office of the secre-

tary of state, is the exclusive and conclusive proof and evidence of the text of the law as announced in such bill. And that such bill cannot be impeached except and unless it shows upon its face that it violates some constitutional provision, or that it be shown, by records which the constitution requires be kept by the legislature, that some mandatory provision of the constitution has not been complied with in its passage by the legislature, or the signing by the officers whose signatures the constitution requires to be attached thereto.''

Pursuant to the above pronouncement, we there held that the statute, known as the Salary Reduction Act, was void because the legislature failed to follow certain mandatory provisions of the constitution in the course of its enactment. Since such decision we have had occasion to review the legislative history of several other statutes, but our later decisions have uniformly been to the effect that the mandatory provisions of the constitution were complied with by the legislature. In the case of Scott v. Board of Assessment & Review, 221 Iowa 1060, 267 N. W. 111, we upheld the enactment of chapter 329-f1 of the Code, 1935 [Ch. 329.3, C'39], which imposes a personal net income tax, a business tax on corporations, and a retail sales tax. In the case of State v. Arluno, 222 Iowa 1, 268 N. W. 179, 182, we held that constitutional mandates were not violated in the enactment of the Iowa Liquor Control Act. In the case of Brown v. West, 222 Iowa 331, 268 N. W. 525, we sustained chapter 211 of the Acts of the Forty-seventh General Assembly, relating to the recording of a conditional sales contract. In the case of State v. Woodbury County, 222 Iowa 488, 269 N. W. 449, we held that the constitutional mandates were complied with in the enactment of chapter 56 of the Acts of the Forty-fifth General Assembly, Extra Session, providing a tax on motor fuel. In the case of Witmer v. Polk County, 222 Iowa 1075, 270 N. W. 323, we sustained the Public Bidder Law, when subjected to similar attack.

The record in reference to the enactment of chapter 419-f1 of the Code, 1935 [Ch. 419.1, C'39], comprises over 70 pages of the abstract. For us to specifically pass upon the various contentions of appellant in regard to such record, it would be necessary to set forth, interpret and explain much of the record in this opinion. All of the propositions urged by appellant are

fully answered by our holdings in the cases above-cited. We do not deem it necessary to reassert the positions there taken by us. Appellant's contentions in reference to the constitutionality of the enactment of chapter 419-f1 of the Code, 1935 [Ch. 419.1, C'39], have been carefully considered by the court, and are found to be without merit.

III. Whereas appellant's contention regarding the constitutionality of the *enactment* of chapter 419-f1 of the Code, 1935 [Ch. 419.1, C'39], challenges the validity of the entire chapter, the contentions in reference to the constitutionality of the *provisions* of the chapter are limited to subparagraph a-2 of section 9438-f13 of the Code, 1935 [9438.13 (1-b), C'39], included within such chapter. Appellant's position is that, by said subparagraph a-2, the legislature undertook to delegate to the State Banking Board legislative power in contravention of Article III, section 1, of the constitution of Iowa.

A proper interpretation of the statute attacked requires consideration of other provisions. The chapter provides that a person, co-partnership, association or corporation engaged in making loans of $300 or less, may not charge a greater rate of interest than that permitted by law unless he be a licensee under the chapter. Provision is made for making application for such license, fixing the fee, requiring a bond, authorizing the superintendent to make an investigation and approve or deny the application, providing for renewal, suspension, revocation or surrender of the license once granted, providing for examination of the business conducted, and the making of annual reports by the licensee. The superintendent is also authorized to make reasonable rules and regulations necessary for the enforcement of the chapter and may employ assistants necessary to enforce the provisions of the chapter. In other words, the chapter provides for rather extensive regulation and control of the business of making loans of $300 or less. Such is its general purpose.

Section 9438-f13 [9438.13, C'39] provides that the state banking board, created by chapter 412-a1 of the Code [Ch. 412.1, C'39], shall have power, jurisdiction and authority to enforce the conditions and find the facts with reference to the business of making small loans, and report to the general assembly thereon. Under subparagraph a-2 of said section 9438-f13

[9438.13(1-b), C'39], the banking board is given power, jurisdiction and authority, on the basis of facts so found by it:

"2. To determine and fix by a regulation such maximum rate of interest or charges upon each such class of small loans as will induce efficiently managed commercial capital to enter such business in sufficient amounts to make available adequate credit facilities to individuals without the security or financial responsibility usually required by commercial banks."

Subparagraph d of said section 9438-f13 [9438.13(4), C'39] provides:

"d. Until March 1, 1935, and until such further time as a different rate is fixed by the board, the maximum rate of interest or charges upon such class or classes of small loans shall be three per cent per month on any part of the unpaid principal balance of the loan not exceeding one hundred and fifty dollars and two and one-half per cent per month on any part of the loan in excess of one hundred fifty dollars."

Under the record herein, it is stipulated that the State Banking Board threatens, intends and expects to carry out the provisions of subparagraph a-2, above-quoted. Appellant contends that an injunction should issue because the provisions they seek to enforce constitute an unconstitutional delegation of legislative power contrary to Article III, section 1, of the constitution of Iowa.

In Article III of the constitution, under the heading, "Of the Distribution of Powers", section 1 provides:

"The powers of the government of Iowa shall be divided into three separate departments—the Legislative, the Executive, and the Judicial: and no person charged with the exercise of powers properly belonging to one of these departments shall exercise any function appertaining to either of the others, except in cases hereinafter expressly directed or permitted." In said Article III under the heading, "Legislative Department", section 1 provides: "The legislative authority of this State shall be vested in a General Assembly." The foregoing provisions of our constitution are similar to provisions in the constitution of the United States and the constitutions of the several states. As everyone knows, the doctrine of separation of powers is a

unique characteristic of the American system of government. By virtue of this doctrine, the legislature is prohibited from delegating its power to other branches of the government. An administrative board, such as the state banking board, constitutes a part of the executive branch of the government. Hence, under our system, Article III of the constitution prohibits delegation to the executive branch powers which can be exercised solely by the legislative branch of the government. There are various decisions of this court and innumerable decisions of the federal courts and the courts of the several states recognizing and interpreting this principle.

Appellant relies upon our holding in the case of Goodlove v. Logan, 217 Iowa 98, 108, 251 N. W. 39, 43, which declared section 5066 of the Code, 1931, to be unconstitutional. This section authorized the state highway commission to establish rules and regulations relative to the use of primary roads. Among the rules so authorized were, "3. The stopping of vehicles on the paved portion of the roadway, and the stopping of vehicles on any portion of primary roads for service at wayside markets or filling stations." Pursuant to the authority so conferred upon it by the legislature, the highway commission adopted its Rule VII as follows:

"VII. Stopping on Traveled Portion of Road. No vehicle shall stop on the traveled portion of any primary road except when such vehicle is disabled and unable to proceed without emergency repairs or change of tires."

In determining that the delegation of such power and authority to the highway commission violated Article III of the constitution, we conclude as follows:

"Thus it seems to us that the legislature under Code section 5066 has left to the highway commission first to say whether there shall be any law, and, second, what that law shall be. This is a delegation of legislative power, and same is unconstitutional."

Subsequently, in the case of State v. Van Trump, 224 Iowa 504, 508, 275 N. W. 569, 572, this court followed the holding in Goodlove v. Logan, supra, and held subdivision 5 of section 1703-d12 of the Code, 1935, to be unconstitutional as an invalid

delegation of legislative power. By such statute, the state conservation commission was authorized and empowered to:

"5. Adopt rules and regulations subject to the approval of the executive council for the propagation, the protection, the trapping, hunting, pursuing, catching, killing, fishing for, or the taking in any manner of, or the selling or transportation of all or any portion of, or the use or the having possession of any fish, birds, mussels, fur-bearing, or other animals, the protection of which may be advisable throughout, or in portions of the state, whenever, after investigation, such regulations shall be desirable for the proper use and conservation of the resources of the state."

In holding such statute to be unconstitutional, we conclude as follows:

"When we come to analyze the language of section 1703-d12, we find that it grants what Justice Cardozo of the United States Supreme Court described in the Panama Refining Company case, supra, as a 'roving commission' and a 'vagrant and unconfined' power to establish and make law. There is no sufficient 'yardstick' or statement of legislative policy in the broad grant of power to the conservation commission to 'adopt rules and regulations—whenever * * * such regulations shall be desirable for the proper use and conservation of the resources of the State.' Such delegation of power, without definition of legislative policy and standard, amounts to surrender by the legislature to the commission of its duties. This cannot be done in keeping with the spirit and intent of the Constitution, and it is therefore our holding that the rules and regulations so adopted and published by the state conservation commission are without authority and void."

In commenting upon the results which might be reached, were this court to disregard its duty and obligation to declare an act of the legislature unconstitutional when it violates the provisions of the constitution, we state in Goodlove v. Logan, supra, at page 107 of 217 Iowa, 251 N. W. at page 43, as follows:

"If the legislature had a right to pass section 5066, granting to the highway commission the authority to adopt rules

and regulations governing the stopping of cars upon a paved highway, the legislature can also empower the highway commission to pass rules and regulations governing the speed and right of way, and all duties of automobile drivers. If the legislature can delegate to the highway commission the right to do these things, then, of course, the legislature can delegate the same power to the board of control, to the insurance commissioner, superintendent of banking, and all other administrative departments of the state may be likewise empowered to enact rules and regulations to be given the force of statutes, which said commission might in their judgment determine to be for the general protection of the public. Once such bureaucracy has fastened itself into the life of legislative power, little else need be done by the legislature than to meet and create boards.''

Appellant's contentions herein, based upon the holdings above-quoted, present an imposing challenge to the constitutionality of the statute now under attack. Were we to strictly construe the inhibition contained in Article III of the constitution that ''no person charged with the exercise of powers properly belonging to one of these departments shall exercise any function appertaining to either of the others'', appellant's contentions would appear to have substantial merit. However, it must be borne in mind that this court, in harmony with the other courts of this country, both state and federal, recognizes that the exercise of its prerogative to declare an act of the legislature unconstitutional is a delicate function, which should be exercised not only with care, but also only in those cases where it is clear, plain and palpable that such decision is required. Before making such decision, we approach the question faced with a presumption that the legislation is constitutional and with an inhibition that we cannot otherwise declare if there is a reasonable doubt on the subject. This proposition is announced by us in the case of State v. Manning, 220 Iowa 525, 530, 259 N. W. 213, 216, wherein we state:

''In the first place, we are confronted with the rule of construction of legislative acts laid down by our court that: 'There is no presumption against the validity of an act of the legislature. On the contrary, all presumptions are in its

favor, and a statute will not be held unconstitutional unless its contravention of constitutional guaranties is so clear, plain, and palpable as to leave no reasonable doubt on the subject; and where the language is reasonably susceptible of different meanings, the courts will lean to that construction which is consistent with its validity.' City of Des Moines v. Manhattan Oil Company, 193 Iowa 1096, at page 1117, 184 N. W. 823, 832, 188 N. W. 921, 23 A. L. R. 1322; State v. Hutchinson Ice Cream Co., 168 Iowa 1, 147 N. W. 195, L. R. A. 1917B, 198; Barr v. Cardell, 173 Iowa 18, 155 N. W. 312; McGuire v. Chicago B. & Q. R. Co., 131 Iowa 340, 108 N. W. 902, 33 L. R. A. (N. S.) 706; State v. United States Express Company, 164 Iowa 112, 145 N. W. 451; Brady v. Mattern, 125 Iowa 158, 100 N. W. 358, 106 Am. St. Rep. 291; Rodemacher v. Milwaukee & St. P. Ry. Co., 41 Iowa 297, 20 Am. Rep. 592.''

■ Pursuant to the pronouncement above-quoted, and the cases therein cited, this court, in harmony with the decisions of the federal courts and the courts of the several states, has adopted a liberal interpretation of the constitution in favor of the constitutionality of legislation. Accordingly, those who contend that the tendency developed during the last 25 years to delegate legislative power to administrative boards and tribunals threatens our form of government, must look to the legislature primarily for relief. It is only in extreme cases, where unconstitutionality appears beyond a reasonable doubt, that this court can or should act, unless we are to depart from fundamental and well established principles of construction, which we are convinced are sound and should be adhered to.

■ In recognizing that, under the liberal interpretation of the constitution above referred to, a legislature can, under certain circumstances, delegate to an administrative board or tribunal power to make rules and regulations, we state in the case of State v. Van Trump, supra, at page 506 of 224 Iowa, 275 N. W. at page 570, as follows:

''The legislature may not delegate its purely legislative power. The courts thruout the land have held this. Nevertheless, it has been recognized from . the very earliest times that this does not prevent the legislature from invoking the aid of other governmental departments in effectuating its policies. This court has endeavored, within constitutional limits,

to pursue a 'common sense' policy in determining the extent to which delegation may be permitted, and to give due consideration to the necessities of governmental coordination and the practical difficulty of adapting legislation to complex conditions involving a host of detail. Hampton, Jr., & Co. v. U. S., 276 U. S. 394, 48 S. Ct. 348, 72 L. Ed. 624; McLeland v. Marshall County, 199 Iowa 1232, 201 N. W. 401, 203 N. W. 1; Loftus v. Department of Agriculture, 211 Iowa 566, 232 N. W. 412; Talarico v. City of Davenport, 215 Iowa 186, 244 N. W. 750; State v. Manning, 220 Iowa 525, 259 N. W. 213; Vilas v. Iowa State Board of Assessment & Review, 223 Iowa 604, 273 N. W. 338.''

Again, at page 507, we state:

''No government, embodying the principles of the separation of power could function if the legislature were prohibited from conferring power or authority of any character upon executive or administrative officials. The cases demonstrate that no such arbitrary prohibition is intended. In determining whether a statute authorizing the adoption of rules and regulations involved an unconstitutional delegation of legislative power, the issue is not whether any such authority has been delegated but rather is as to the nature of the authority involved.

''If it is 'strictly and exclusively legislative' in character, it cannot be delegated. If it is not of that restricted character, it may be.

''When the legislature declares a general rule and prescribes the circumstances under which it shall apply but in such general terms as to require that authority be delegated to others 'to fill up the details' by rule or regulation, the weight of authority is that the 'strictly and exclusively legislative' power has not been delegated. When the legislature lays down an intelligible and complete declaration of policy which is definite in describing the subject to which it relates or to the field wherein it shall apply, and the character of regulation which is intended to be imposed, it is proper to leave to a non-legislative body the manner in which that general policy shall apply to varying situations.''

Pursuant to the principles recognized by us in the Van

Trump case above-quoted from, this court has sustained numerous statutes, which delegate to administrative boards and officials power and authority "to fill up the details" after the legislature has laid down "an intelligible and complete declaration of policy which is definite in describing the subject to which it relates or to the field wherein it shall apply." One of the most notable examples is the case of McLeland v. Marshall County, 199 Iowa 1232, 1238, 201 N. W. 401, 403, 203 N.W. 1, cited in the Van Trump case, supra. By this decision we sustained the validity of the primary road law, which created primary and secondary road systems, and authorized and empowered the state highway commission to exercise wide powers of supervision over such systems. It was contended that this was an invalid delegation of legislative power. In holding otherwise, we state:

"It may be conceded, as contended by appellants, that the highway commission is an administrative body only, and cannot properly exercise legislative power. The inquiry is, then, do the statutes in question attempt to confer legislative power upon the commission? We think, upon careful examination and analysis of the statutes in question, that they do not lend support to the position of appellants that they confer legislative duties and power upon the commission. The exact line of demarcation between legislative power and administrative duties, in some cases, is not easily determinable. It may be stated in a general way that it is for the legislature to determine what the law shall be, to create rights and duties and provide a rule of conduct. This does not necessarily mean that the legislature must lay down a strict rule that must be followed by an administrative officer; but that an executive or commission may be vested by the legislative branch of the government with discretion, within certain limits, in carrying out the provisions of a statute."

In an earlier case, Hubbell v. Higgins, 148 Iowa 36, 43, 126 N. W. 914, 917, we sustained chapter 168 of the Acts of the Thirty-third General Assembly, which provided for inspection of hotels, stating as follows:

"It is next argued that the act in question confers upon the hotel inspector legislative powers. This contention is based

upon certain general provisions contained in the statute which call for the exercise of judgment on the part of the hotel inspector. By its terms such act is not applicable to hotels of 'approved fireproof construction.' It is argued that this expression is not known to the trade, and therefore that it can mean nothing except that the hotel inspector may arbitrarily approve or disapprove a given hotel as being of 'fireproof construction' or otherwise. The act also provides that 'approved sanitary conditions' shall be maintained, and that cesspools and privies shall be properly cleaned and disinfected as often as necessary to maintain them in such sanitary condition. It is argued that the inspector may arbitrarily determine whether a hotel is thus maintained in a sanitary condition or not, and that the statute contains no definition which will protect the hotel keeper against such arbitrary conduct. * * * The fallacy in the argument at this point is the assumption that the hotel inspector may arbitrarily, in a given case, find the facts to be otherwise than as they truly are. The inspector is himself amenable to the law and can proceed only under the law and in accordance with the facts as they shall be.''

In the case of Brady v. Mattern, 125 Iowa 158, 169, 100 N. W. 358, 362, 106 Am. St. Rep. 291, we sustained chapter 77 of the laws of the Twenty-ninth General Assembly, which conferred upon the auditor of the state and the executive council discretion in the regulation and control of building and loan associations, stating as follows:

''It is further contended, however, that the statute is open to the objection that it improperly confers legislative power upon the Executive Council and the Auditor of State. Here, again, we find no authorities which hold that the Legislature cannot give to executive officers a discretion in determining the conditions to be imposed on the conduct of a business which is subject to legislative control. The Legislature can only pass general statutes. It cannot provide for their application to particular conditions. Discretion may be conferred upon a railroad commission to fix rates of fare or freight. Georgia Railroad v. Smith, 70 Ga. 694. The board of supervisors of a county may be given the authority to fix the fees or compensation of officers. Ryan v. Outagamie County, 80 Wis. 336 (50

N. W. Rep. 340). We see no reason why the Legislature cannot authorize the Executive Council to determine whether the plan and methods in accordance with which the building and loan business is to be conducted by any particular association are fair, reasonable, and in accordance with public policy, or why the State Auditor cannot be authorized to fix the amount of securities which an unincorporated association desiring to conduct such business in the State shall deposit for the security of its members. It must be assumed that State officers will act fairly and impartially and in accordance with their best judgment, and statutory provisions allowing them to exercise a discretion in such action are not to be condemned as unconstitutional. Burlington, C. R. & N. R. Co. v. Dey, 82 Iowa 312.''

In Noble v. English, 183 Iowa 893, 905, 167 N. W. 629, we sustained an act, which conferred upon the commissioner of insurance discretion in the regulation and control of insurance agents. In Lloyd v. Ramsay, 192 Iowa 103, 183 N. W. 333, we sustained an act, which conferred upon the secretary of state discretion in approving articles of incorporation presented for filing in his office. In Loftus v. Dept. of Agric., 211 Iowa 566, 582, 232 N. W. 412, we sustained the bovine tuberculosis law, which conferred upon officials in the department of agriculture discretion for the purpose of controlling and eradicating bovine tuberculosis. In State v. Manning, supra, we sustained the constitutionality of section 388 of the Code, 1931, which conferred upon the director of the budget discretion in authorizing a temporary or permanent transfer of funds by a municipality. In Vilas v. Board of Assmt. & Rev., 223 Iowa 604, 273 N. W. 338, we sustained chapter 82 of the Acts of the Forty-fifth General Assembly, Extra Session, which conferred upon the board of assessment and review authority to prescribe all rules and regulations not inconsistent with the provisions of the Iowa income and sales tax law.

The only decision, cited in the briefs, and apparently the only one, so far decided which is directly analogous to the decision here required of us, is that of Finance Aid Corp. v. Wallace, supra. The Indiana court there sustained, as constitutional, a statute substantially identical with that now before us. The same attack was made there as is made here. In

sustaining the legislation, the court states at page 475 of 23 N. E. 2d, as follows:

"As pointed out in Blue v. Beach, supra [155 Ind. 121, 56 N. E. 89, 50 L. R. A. 64, 80 Am. St. Rep. 195], the Legislature cannot delegate the power to make a law, but it can make a law to delegate a power to determine facts upon which the law makes its own action depend. * * * The 1933 act in fixing the rate of interest to be charged on small loans declares the policy of the state to be that the rate of interest must be such as will induce legitimate capital to enter that field and make loans upon security not recognized by banking institutions, and to enable persons in need of funds to borrow the money from the small loan company to meet their obligations, and in cases where the money could not be had from other financial institutions. * * * It appears that the act has prescribed standards sufficiently definite, and has carefully defined the activities of the Department of Financial Institutions. Since the law prescribes the policies, fixes a rate of interest to be charged until otherwise fixed by the department after a full and careful investigation, and delegates to the department the authority to find the facts applicable to each case before granting a license, and this to be done only after a full and complete hearing and upon a consideration of an inducement of capital into that field, it is difficult to understand where the law transgresses the constitutional provisions as claimed by the appellant. The standard is as definite and certain as the Legislature could fix by a general statute."

■■ Applying the rules announced by us in the decisions hereinbefore cited to the record now presented to us, we are disposed to agree with the Indiana court. The contentions of appellant raise a doubt as to the constitutionality of the statute attacked, but, as heretofore pointed out, the burden upon appellant requires more than a reasonable doubt as to the *validity* of the statute. It is necessary that the statute be shown to be *invalid* beyond a reasonable doubt. We are unable to reach any such conclusion and, accordingly, pursuant to the presumption in favor of the constitutionality of the statute and resolving such doubts as there may be in favor of its constitutionality, we are disposed to find and hold that the standards

fixed by the legislature are sufficiently definite and carefully defined to warrant conferring upon the State Banking Board power to find the facts, adopt rules and regulations accordingly, and give effect to the legislative policy determined by the general assembly.

By reason of the foregoing, the decree must be and it is affirmed.—Affirmed.

All Justices concur.