CENTRAL STATES THEATRE CORPORATION, appellee, v. ROBERT SAR et al., trustees for St. Charles Township, Floyd County, et al., appellants.

No. 48522.

(Reported in 66 N.W.2d 450)

OCTOBER 19, 1954.

E. W. Henke, County Attorney, Floyd County, Leo A. Hoegh, Attorney General, and Earle S. Smith and Kent Emery, Assistant Attorneys General, for appellants.

Brody, Parker, Miller, Roberts & Thoma, of Des Moines, and Zastrow, Noah & Smith, of Charles City, for appellee.

THOMPSON, J.—The facts in the case at bar are not in dispute. The plaintiff has been at all times material a Delaware corporation duly authorized to do business in Iowa. The defendants Sar, Klages and Fluhrer were likewise the duly elected, qualified and acting trustees of St. Charles Township, Floyd County. McGeeney was a justice of the peace for said township, Henke the county attorney and Atherton the sheriff of Floyd County. On May 9, 1950, plaintiff was granted a license to operate a drive-in theater for the purpose of showing motion pictures in said township. Plaintiff thereupon acquired a site for the operation of its theater, but did not actually begin construction until June 3, 1952. The work was completed about the end of that month, the cost of construction being approximately $35,000. On June 5, 1952, plaintiff made application for another license for the operation of its theater. No action was taken by the trustees and no license issued. On June 27, 1952, plaintiff began operation of its theater. On the next day its local manager was arrested and charged with violation of chapter 361 by operating a theater without a license. On April 6, 1953, plaintiff made another application for a license but was advised on April

10, 1953, that no license would be issued. No reason was given for the refusal. On April 4, 12 and 13 plaintiff's manager was arrested on the same charge.

In 1952 and 1953, respectively, licenses were granted to another drive-in theater, with which plaintiffs had no connection. This theater is located on Highway 14, while plaintiff's is on Highway 218, but both are in St. Charles Township. Plaintiff's manager was threatened with arrest for each day plaintiff's theater was operated without a license.

On April 14, 1953, plaintiff commenced this action, alleging the foregoing facts in substance, with others which we do not deem material to our determination. Upon final hearing, the trial court held chapter 361, above referred to, to be unconstitutional and granted plaintiff an injunction against further interference by the defendants with the operation of its theater.

I. Section 361.1 of chapter 361 of the Code of 1950 is set out herewith:

"361.1 License required. No person shall, for himself or for any other person, firm, or corporation, keep or operate for hire or for profit any theater, moving picture show, pool or billiard room or table, dance hall, skating rink, club house, roadhouse, amusement park, or bowling alley, outside the limits of cities and towns without first procuring a license therefor from the township trustees.

"This section shall not apply to baseball games or county fairs."

Section 361.3 is also material to the questions under consideration. It provided:

"361.3 Limitations and conditions. The granting of a license shall be discretionary with the trustees; provided, however, that a license to operate a theater or moving picture show shall not be denied in any unincorporated village having a population of one thousand or more except for good cause. Licenses shall not be granted for a less period than six months nor for a longer period than one year, shall specify the place where the business may be carried on, the date of expiration of the license, and be signed by the chairman of the board and its clerk."

1258

Other sections of said chapter 361 provide that the terms and conditions under which a license is granted shall be entered of record in the minutes of the board and these shall be reasonably uniform for different licensees under like terms and conditions. There are further provisions for revocation of licenses at the discretion of the trustees, and that any person aggrieved by such revocation may appeal to the district court of the county. There are also criminal provisions providing for a fine for each violation of the chapter or of the terms and conditions imposed when a license is granted.

Plaintiff's petition specifically alleges chapter 361 offends against sections 7 and 9 of Article I of the Constitution of the State of Iowa, and against the First and Fourteenth Amendments to the Constitution of the United States. Section 7 of the Iowa Constitution and the First Amendment to the Federal Constitution provide for freedom of speech and of the press; section 9 of the Iowa Constitution and the Fourteenth Amendment to the United States Constitution are the "due process" clauses, respectively.

■ The legal points involved have been thoroughly examined and argued by the able counsel for the respective parties. The discussions have taken a wide range; but in our view of the case the basic principles upon which a final determination must rest are not complicated and the required decision is clear. It is well settled that when constitutional questions are raised all reasonable intendments must be indulged in favor of the validity of the statute. The prerogative of the courts to declare acts of the legislative body illegal because they transgress upon provisions of the State or Federal Constitution must be exercised with great care and only in compelling cases. Miller v. Schuster, 227 Iowa 1005, 1014, 289 N. W. 702, 706, 707. Yet, even keeping this rule in mind, we find no means of escape from the conclusion that chapter 361 is invalid in that it violates the constitutional provisions for freedom of speech and against deprivation of rights or property without due process of law. We agree with the conclusion of the trial court.

■ II. It is obvious that the provisions of chapter 361 offend against the constitutional guaranties of due process of

law. The right to operate a legitimate business is one which the state may regulate but may not prohibit or unreasonably restrict. We have often so held.

In Rehmann v. City of Des Moines, 200 Iowa 286, 291, 204 N.W. 267, 269, 40 A. L. R. 922, we said: "* * * cities may not declare a retail grocery store to be a nuisance per se, or prohibit the erection thereof in a residential district solely because it offends the aesthetic taste of those residing in the vicinity."

In Anderson v. Jester, 206 Iowa 452, 457, 221 N.W. 354, 357, is this statement: "Arbitrary and unreasonable restrictions upon the use and enjoyment of property, prohibition of use which does not interfere with the equally rightful use and enjoyment by others of their property, or with the paramount rights of the public, or deprivation of property without due process of law, cannot be sustained * * *."

In State v. Logsdon, 215 Iowa 1297, 1300, 248 N.W. 4, 5, the rule is stated: "It is well settled that a license law adopted for the purpose of its effect on trade, or to remove competition, or which needlessly interferes with lawful occupations, is class legislation, and effects the taking of property without due process of law."

In Gilchrist v. Bierring, 234 Iowa 899, 909, 14 N.W.2d 724, 729, we quoted with approval from State v. Cromwell, 72 N. D. 565, 578, 9 N.W.2d 914, 920: " 'But, as we have said above, a regulatory statute enacted in the exercise of the police power must be reasonable. Its real purpose must be to protect the public health, morals or general welfare, and it must be reasonably required and suited to attain that purpose. It cannot masquerade as an exercise of the police power and arbitrarily invade personal rights or private property. It cannot disregard the constitutional guaranties.' "

To the same effect are L. K. Liggett Co. v. Baldridge, 278 U. S. 105, 111, 49 S. Ct. 57, 73 L. Ed. 204, 208, 209; New State Ice Co. v. Liebmann, 285 U. S. 262, 278, 52 S. Ct. 371, 76 L. Ed. 747, 754; Weaver v. Palmer Bros. Co., 270 U. S. 402, 415, 46 S. Ct. 320, 70 L. Ed. 654, 658; Adams v. Tanner, 244 U. S. 590, 594, 37 S. Ct. 662, 61 L. Ed. 1336, 1343, L. R. A. 1917F

1260

1163, Ann. Cas. 1917D 973; Burns Baking Co. v. Bryan, 264 U. S. 504, 44 S. Ct. 412, 68 L. Ed. 813, 32 A. L. R. 661; Watchung Lake, Inc., v. Mobus, 119 N. J. L. 272, 196 A. 223; Department of Financial Institutions v. Holt, 231 Ind. 293, 108 N.E.2d 629; Whitcomb v. Emerson, 46 Cal. App.2d 263, 115 P.2d 892.

The Nebraska Supreme Court has well put the governing law thus, in Jewel Tea Co., Inc., v. City of Geneva, 137 Neb. 768, 780, 291 N.W. 664, 670: "Nor can the police power be exerted arbitrarily to interfere with private business, or to prohibit lawful occupations, or to impose unreasonable or unnecessary restrictions upon them under the guise of protection of the public."

Many other cases might be cited to the same effect.

██ ██ It is true the police power of the state permits the licensing and regulation of legitimate businesses where necessary for the public good. But this regulation must not be capricious, arbitrary or unreasonable. It must have some relation to the general welfare, and it may not ordinarily go to the extent of entire prohibition of operation of the business. A reading of the statutes under examination here—sections 361.1 and 361.3—makes abundantly clear their vulnerability to constitutional challenge. The first section provides that none of the enumerated businesses—among which we find "moving picture show"—shall be operated outside cities or towns until a license is first procured therefor. Section 361.3 says that the granting of a license shall be discretionary with the township trustees. There are no standards fixed, no guideposts set up, no beacons lighted to show the trustees how far they may or may not go in granting or denying the license without which the stated businesses may not be operated. The trustees may, so far as the statute goes, deny any applicant a license for a good reason, for a bad reason, or for no reason. The discretion given them by the statute is unlimited; and so far as the record shows, that is the way they have exercised it. They denied the license to plaintiff without explanation. In doing this they were within the terms of the statute; and likewise in so doing they demonstrated the statute's offense against the due process clauses of the Federal and State Constitutions. If the state may not, by

statute, prohibit or unreasonably restrict the operation of a legitimate business, as the authorities uniformly hold, by what reasoning may it achieve the same result by leaving the life or death of the business to the uncontrolled discretion of a subordinate governmental division or an administrative body? The question answers itself.

The identical question here involved was before the Michigan Supreme Court in Devereaux v. Township Board of Genesee Township, Genesee County, 211 Mich. 38, 177 N.W. 967. The Michigan statute, identical with our chapter 361, in substance, provided that no billiard or pool room, public dance hall, bowling alley or soft-drink emporium should be operated in any place in the state outside of an incorporated city or town without obtaining an annual permit from the board of township trustees. Criminal penalties were provided for violation. The Michigan Supreme Court said, page 43 of 211 Mich., page 969 of 177 N.W.: "The statute in question provides no method for the application for licenses, contains no qualifications which the applicant must possess, provides no standard of fitness, makes no provisions as to the character of the structure or equipment to be used in the business regulated. *It, in fact, attempts to confer upon the township board the arbitrary power to grant or refuse a license, according to its whim or caprice. Under all the authorities, we think this cannot be done.*" (Italics supplied.)

The defendants attempt to distinguish the Michigan law from Iowa's by saying ours forbids all operation unless the license is obtained, while the Michigan statute is purely regulatory. The distinction, if it existed, would serve only to make the Iowa statute more open to condemnation, since we have pointed out that legitimate businesses may be reasonably regulated but may not be entirely prohibited. But a comparison of the language of the two statutes shows no real difference. Each in terms prohibits the operation of certain enumerated businesses unless a license is first obtained from the township board, which may grant or refuse at its uncontrolled and arbitrary discretion. The Michigan case is directly in point, and we think announces the correct rule of law.

The parties have spent considerable effort in argument as to whether a board of township trustees is a municipal corporation or a mere administrative body. We think the question immaterial. A statute empowering a municipal corporation to prohibit or unreasonably restrict the operation of a legitimate business would transgress the constitutional requirements of due process just as would the same power delegated by statute to an administrative board. Power to violate the due process clauses is lacking in the legislative body no matter how it attempts to exercise it.

 We have several times held that a statute which attempts to delegate power to make rules to an administrative board, without setting up standards for the board to follow, is unconstitutional. State v. Van Trump, 224 Iowa 504, 275 N.W. 569; Goodlove v. Logan, 217 Iowa 98, 251 N.W. 39. In the Van Trump case, the specific charge was violation of Article III, section 1, of the State Constitution, pertaining to the separation of powers of the three branches of the government. In Goodlove v. Logan, supra, it is not altogether clear which section, or sections, of the State or Federal Constitution were thought to be violated. We deem it unimportant. The granting of absolute power and unlimited discretion to deny a license to a legitimate business offends against due process. If reasonable standards within which the discretion of the trustees must be exercised were contained in the statute, and if such standards were properly followed, the matter would come under the heading of legitimate regulation rather than prohibition. The defendants think the trustees are a subordinate division of the state, empowered to exercise police powers within the scope of the authority granted by the legislature. We shall not decide this controversy. Neither the legislature by statute, a municipal corporation by ordinance or resolution, nor an administrative board exercising police powers may deprive the owner or operator of a legitimate business of his property by prohibition of his operation or by capricious and unjust regulation thereof.

 III. The defendants meet the constitutional questions encountered in Division II first by the contention that the operation of motion-picture theaters is not such a legitimate

business as has a right to operate under reasonable regulations, but that the operator of such a business has only a privilege. Thus they would class the motion-picture business with the sale of liquors, cigarettes, and such other businesses as are classed as illegal per se, and are permitted to operate at the uncontrolled will of the sovereign or such subdivisions as it may give power to prohibit or license them. Walker v. City of Clinton, 244 Iowa 1099, 59 N.W.2d 785, and cases cited therein are based upon the rule that when a business is inherently illegal a permit to operate may be granted or refused at the will of the licensing body, is a privilege rather than a property right, and may be revoked without notice or hearing.

That motion-picture theaters come in this class is held in Thayer Amusement Corp. v. Moulton, 63 R. I. 182, 7 A.2d 682, 124 A. L. R. 236. It is there said the operator of such a business has no right to a license, but it is a privilege only if it is granted to him and may be taken away arbitrarily and without notice. We would be unable to agree with this holding, even if the question had not been decided otherwise recently by the Supreme Court of the United States in Burstyn v. Wilson, 343 U. S. 495, 72 S. Ct. 777, 96 L. Ed. 1098, and Gelling v. Texas, 343 U. S. 960, 72 S. Ct. 1002, 96 L. Ed. 1359. We shall revert to these cases later.

Block v. City of Chicago, 239 Ill. 251, 87 N. E. 1011, 130 Am. St. Rep. 219, is also cited as a case holding that motion-picture theaters are to be classed among those businesses inherently illegal and so having no vested rights in operation. But the real holding of the case is that an ordinance prohibiting showing of obscene and immoral pictures was valid as applied to plaintiff's films. Likewise in Nahser v. City of Chicago, 271 Ill. 288, 111 N. E. 119, L. R. A. 1916D 95, the question decided was that prohibition of operation within 200 feet of a church was reasonable and proper. Higgins v. Lacroix, 119 Minn. 145, 150, 137 N.W. 417, 419, 41 L. R. A., N. S., 737, turned upon the reasonableness of an ordinance requiring a license fee of $200 per year. There is dictum to the effect that the motion-picture business is "among those pursuits which are liable to degenerate and menace the good order and morals of the people, and may therefore not only be licensed and regulated, but

also prevented by a village council." The real holding of the case is, however, that the license fee was not unreasonable regulation.

The Washington Supreme Court, in Vincent v. City of Seattle, 115 Wash. 475, 197 P. 618, held that the business of conducting an amusement park on private property involved nothing inherently inimical to the public morals · and might not be prohibited but could only be reasonably regulated. We think it could be plausibly urged there is as much inherent evil in an amusement park with its various shows and devices as in a motion-picture theater. But however that may be, the matter is settled by the cases of Burstyn v. Wilson and Gelling v. Texas, both supra. In the Burstyn case the United States Supreme Court held that an attempt to prohibit the showing of a film because it was sacrilegious was a deprival of the constitutional right of freedom of speech guaranteed by the First Amendment. The court cited a series of its recent decisions which hold that the liberty of speech and of the press guaranteed by the First Amendment against abridgment by the Federal Government is within the liberty safeguarded by the Fourteenth Amendment, the due process and equal protection clauses of the Constitution. Further, the court said at page 502 of 343 U. S., page 780 of 72 S. Ct.:

"It is further urged that motion pictures possess a greater capacity for evil, particularly among the youth of a community, than other modes of expression. Even if one were to accept this hypothesis, it does not follow that motion pictures should be disqualified from First Amendment protection. *If there be capacity for evil it may be relevant in determining the permissible scope of community control, but it does not authorize substantially unbridled censorship such as we have here.*" (Italics supplied.)

What the court said in this sentence is that the business of showing motion pictures may be reasonably regulated; it may not be prohibited either expressly or by arbitrary regulation which reaches the same end. Gelling v. Texas, supra, is to the same effect.

Before leaving the consideration of the violation of the due process clauses of the Federal and State Constitutions attention should be called to Yick Wo v. Hopkins, 118 U. S. 356, 372, 6 S. Ct. 1064, 1072, 30 L. Ed. 220. Although the plaintiff in the case now before us was refused licenses for the years 1952 and 1953 without reason given, another drive-in theater was granted a license in the same township during that time. In the Yick Wo case the authorities of the City of San Francisco had enacted an ordinance prohibiting the operation of laundries in wooden buildings, unless licensed. But the governing body was authorized to issue permits or to deny them as it chose. Two hundred Chinese operators were denied permits, and eighty others, not Chinese subjects, under similar conditions were permitted to operate. The United States Supreme Court held this to be a violation of the Fourteenth Amendment, not only by deprivation of property without due process of law but by denying to the petitioners the equal protection of the laws. It quoted with approval from Baltimore v. Radecke, 49 Md. 217, 33 Am. Rep. 239 : " 'But it commits to the unrestrained will of a single public officer the power to notify every person who now employs a steam engine in the prosecution of any business in the City of Baltimore, to cease to do so, and, by providing compulsory fines for every day's disobedience of such notice and order of removal, renders his power over the use of steam in that city practically absolute, so that he may prohibit its use altogether. But if he should not choose to do this, but only to act in particular cases, there is nothing in the ordinance to guide or control his action.' " The ordinance was held void. The language used both in the Yick Wo and Baltimore v. Radecke cases is much in point here, as were the facts.

IV. We have held in the foregoing divisions that sections 361.1 and 361.3 of chapter 361 transgress the due process clauses of the Federal and State Constitutions. Burstyn v. Wilson and Gelling v. Texas, both supra, hold that the First Amendment to the United States Constitution is violated by an unreasonable and arbitrary censorship ordinance. It would seem that the same would be true of prohibition or unreasonable regulation of a motion-picture theater, where not one but

many films are involved. If the state or its subdivisions or subordinate commissions or boards may not capriciously prohibit the showing of one picture, how may they arbitrarily prohibit the showing of many, by denying a license to the theater in which they are to be shown? Since we have held that our statutes violate due process, and since an amendment to the chapter providing for proper and reasonable regulation instead of prohibition would probably remove the cause of complaint under the freedom of speech as well as the due process clauses, we refrain from further consideration of the problems arising under the First Amendment to the United States Constitution and section 7, Article I, of the Iowa Constitution. Freedom of speech and of the press is not an absolute right, free from any regulation or restriction. It is jealously guarded; but the police power, reasonably exercised, may still prohibit abuses and provide for a wise regulation within the spirit of the constitutions.

We are cognizant of the fact that chapter 361 was enacted for a meritorious purpose. The operation of roadhouses, drive-in theaters, amusement parks, dance halls, skating rinks, and other businesses enumerated in section 361.1, when carried on outside of the limits of cities or towns, poses many problems. Questions of fire dangers, traffic hazards, lack of means of adequate policing, and various forms of corruption of the public morals and creation of nuisances arise which are not found when the same businesses are carried on within municipalities supplied with police and fire protection. A good case may be made for sound regulation; but it must be kept in mind it is reasonable regulation rather than prohibition that is permitted. ██ ██ In this connection must be noted the defendant's second contention that our present statutes are merely a means of zoning the motion-picture industry. Calling our attention to the ordinances of the state which permit cities to establish zones in which certain types of structures or businesses are prohibited, defendants say the state has merely zoned the motion-picture business so that it may operate only in cities and towns, and unincorporated villages having populations of 1000 or more. The comparison is ingenious, but we think unsound. Even zoning

ordinances may not be capricious or arbitrary, but must have some relation to the end to be achieved. Rehmann v. City of Des Moines, supra, pages 290, 291 of 200 Iowa. It would be clearly unreasonable as a matter of zoning to prohibit all theaters outside the limits of cities or towns. We have pointed out certain conditions which might call for regulation; but reasonable regulation and absolute prohibition are far different when constitutional questions are considered. Neither freedom of speech nor due process of law is served by absolute denial of the right of citizens to operate their legitimate businesses.

V. Defendants argue that if any part of the statute should be found unconstitutional, it must be the provision granting the right to license, at their discretion, to the trustees. If this should be so found, they say, the remainder of the statute should be permitted to stand as valid, and there being therein a prohibition of the operation of theaters outside of cities and towns, with no provision for licensing since that part would have been held invalid, the plaintiff would still be precluded from conducting its business. Since we have pointed out that the invalidity of the entire sections 361.1 and 361.3 is based upon the prohibition of the operation of a legal business, this contention, ingenious though it may be, avails defendants nothing. If the licensing provision be stricken out and the statute left with only the prohibition, its unconstitutionality would be equally clear.

VI. Finally, the defendants urge that plaintiff has no remedy in equity; that "injunction will not lie to restrain the enforcement of a law unless the law is clearly unconstitutional." Since we have held the statute which defendants have sought to enforce against plaintiff and its employees "clearly unconstitutional" the foundation of defendants' argument at this point is destroyed. The general rule is thus stated in 28 Am. Jur., Injunctions, section 182, pages 370, 371: "It is recognized, however, that an injunction will lie to restrain the threatened enforcement of an invalid law where the lawful use and enjoyment of private property will be injuriously affected by its enforcement, or where the right of a person to conduct a lawful business or calling will be injuriously affected thereby * * *."

1268

In Bear v. Cedar Rapids, 147 Iowa 341, 351, 126 N.W. 324, 328, 27 L. R. A., N. S., 1150, in upholding the right of the plaintiff to injunctive relief against the enforcement of an invalid ordinance, we said: "The ordinance involves something more than a penalty. If enforced, it may mean the destruction of plaintiff's business." In Huston v. City of Des Moines, 176 Iowa 455, 464, 156 N.W. 883, 887, the same rule was expressed: "Indeed, the general doctrine now is that, if the enforcement of a statute or ordinance which it is claimed is invalid and void, amounts to an invasion of property rights or an irreparable injury, an injunction will lie." See also Cook v. Davis, 218 Iowa 335, 252 N.W. 754. That the enforcement of the unconstitutional statutes referred to herein is a serious denial of plaintiff's property rights and would amount to a destruction of its business seems too clear to require further demonstration.

It is our conclusion that sections 361.1 and 361.3 of chapter 361 of the Code of Iowa, 1950, as applied to the facts of this case are void as being in violation of the guaranties of both the Federal and State Constitutions relating to freedom of speech and of the press and prohibiting taking of property without due process of law.—Affirmed.

BLISS, HAYS, MULRONEY, OLIVER, SMITH, and WENNERSTRUM, JJ., concur.