Peck, J.
The auditor’s appeal to the Common Pleas Court was from the final entry of the Board of Tax Appeals adopting *449 and promulgating rules Nos. 100 to 109, inclusive, in accordance with certain sections of the Revised Code as amended by Amended Senate Bill No. 109 adopted by the 102nd General Assembly, and grounds for the appeal were stated to be that the board failed to comply with the law in adopting the rules and, especially, that rules Nos. 100, 101, 104-D-24, 105 and 106 are unreasonable and unlawful.
The auditor’s first ground for appeal has been specifically abandoned, thus limiting the scope of the appeal to the contentions of the auditor that rules Nos. 100, Í01, 104-D-24, 105 and 106 are unlawful and unreasonable, and that they are void because the statutes under whose authority they were promulgated are unconstitutional.
The auditor’s claim that rules Nos. 101, 104-D-24, 105 and 106 are unreasonable and unlawful is based upon the fact that two separate valuation times are used, one for the land itself and the other for the improvements thereon. These four rules require the land valuation to be made as of the tax-lien date of the year in which the appraisal is made but provide that the valuation of improvements shall be determined on the basis of an unvarying time certain. This is an obvious recognition by the board of the fact that ordinarily land valuations are not subject to any uniform change but that building valuations are. The value of any particular parcel of land on the entire face of the globe may change drastically in value at any moment by reason of its location. This change in value may be an increase or a decrease, depending upon what happens in the immediate neighborhood of the parcel. On the other hand, the change in the intrinsic value of improvements is always downward and such decrease may be determined on the basis of comparatively inflexible rules of depreciation. A simple example of this may be found in the case of a chain of identical prefabricated service stations installed at a variety of locations. The intrinsic value of the improvements will uniformly and equally depreciate, but the value of the parcels of the land on which these improvements are situated may be drastically affected by such factors *450 as road relocations, alterations of traffic patterns or adjacent and neighboring constructions. Adherence to the board’s four rules makes possible an allocation of a realistic valuation to the entire package composed of land and improvements. On the other hand, a requirement that both elements of value be appraised as of the same valuation time would in such instance, and in many others which will come readily to mind, work great injustice where the change in land value has been vastly different from the rather gradually decreasing value of the improvements. We conclude that this equitable and realistic approach by the board is not only not inconsistent with the legislative intent but that it actually implements the intention of the General Assembly to authorize the board to provide for the determination of valuations on such a basis. We accordingly hold that rules Nos. 101, 104-D-24, 105 and 106, providing that land shall be appraised on the basis of its actual worth and value on the tax-lien date of the year in which the appraisal is made, and that the valuation of improvements on the land shall be determined on the basis of prices prevailing at a different time, are not unlawful and unreasonable. The auditor’s argument on this point, which we do not find compelling and which he presents without citation of authority, is that the use of two times of valuation rather than one is inconsistent with the statutory mandate. We do not find the existence of such an inconsistency.
The most powerfully presented contention of the auditor is that the statutes under which rule No. 100 was adopted are themselves unconstitutional because they make a delegation of legislative power to the board and are not in conformity with Section 2, Article XII of the Ohio Constitution. Of course, if this claim of unconstitutionality is well founded, rule No. 100 is void.
Section 1, Article II of the Ohio Constitution, by its terms, vests the legislative power of the state in the General Assembly. This provision, like all other grants of power held to be exclusive, contains the correlative limitation of any other exercise *451 of tlie same powers. A long list of authorities conclusively establish that there may be no delegation of legislative authority, but an equally impressive and more rapidly growing list of cases establish the propriety of the assignment of administrative functions. As usual, there is no dispute in areas at the extreme ends of the scale, but the perplexing question as to where legislative authority ends and administrative function begins persists in the middle areas.
Whether the Legislature has exceeded its power in delegating legislative authority is determined by the extent to which it has created companion rules and standards for the guidance of the administrative agency concerned. If a clear and sufficient determination of policy has been legislatively made and adequate rules and standards of guidance are provided, a claim of unconstitutionality must fall. Unconstitutionality exists where the assigned function of the administrative unit transcends mere functional operation and extends into the policy-making area, and it is the position of the auditor that such is the case here. In support of his position, he cites the three following cases decided by this court, all in accord with the foregoing comments: Weber v. Board of Health, 148 Ohio St., 389, 74 N. E. (2d), 331; Belden v. Union Central Life Ins. Co., 143 Ohio St., 329, 55 N. E. (2d), 629; and Matz, Admr., v. J. L. Curtis Cartage Co., 132 Ohio St., 271, 7 N. E. (2d), 220.
In the Matz case the court stated as follows:
“It is the general rule that in order to confer the power to make rules and regulations upon a commission, the Legislature must establish the policy of the law by adopting standards as has been heretofore stated with reference to conferring official-discretion. The discretion conferred must not be ‘unconfined and vagrant’ and must be ‘canalized within banks that keep it from overflowing.’ (Mr. Justice Cardozo’ in Panama Refining Co. v. Ryan, supra.)
“If such general rule-making power could be conferred indiscriminately. the Legislature could meet, create commissions, pass on to them the duties of legislation and then adjourn *452 sine die. Without restrictions on the commission’s power, rules and regulations of whatever kind could he adopted by it without notice, and changed overnight. The result would be that statutory law would lose its significance and legal rights would be grounded in great measure upon the readily alterable rules and regulations of boards and commissions. Thus the constitutional right of referendum would be denied, government would be given over to the despotic rule of administrative authorities and bureaucracy would run wild. A pertinent discussion of this phase of the problem may be found in Goodlove v. Logan, 217 Ia., 98, 251 N. W., 39.”
Of similar import is paragraph three of the syllabus in the case of Belden v. Union Central Life Ins. Co., supra, which reads as follows:
“It is no violation of the constitutional inhibition against the delegation of legislative power for the General Assembly to establish a policy and fix standards for the guidance of administrative agencies of government while leaving to such agencies the making of subordinate rules within those fixed standards and the determination of facts to which the legislative policy applies.”
In the body of the opinion in that case, the court stated as follows:
“In our state the granting of the rule-making power to the Department of Health, the Tax Commissioner and the Board of Tax Appeals, and the granting of the fact-finding power to the Industrial Commission and the Public Utilities Commission, are but a few examples of such legislation. None of the acts granting such powers has been found to be unconstitutional.” (Emphasis supplied.)
The court again considered this general problem in the more recent case of Rollman & Sons Co. v. Board of Revision of Hamilton County, 163 Ohio St., 363, 127 N. E. (2d), 1, wherein at page 370 it is stated as follows:
“Real estate values fluctuate and it would be literally impossible for a tax body to determine the exact valuation of each *453 parcel within a taxing district on assessment day. In determining a valuation for equalization purposes it is almost imperative that the tax body develop some formula to apply to the valuation of property, and, where no mode or method and no yardstick are set up in the equalization statutes, any efficient mode or method may be adopted. 3 Cooley on Taxation, 2395, Section 1196.”
We are not here confronted with a situation in which no policy determination and no standards for guidance have been established by the General Assembly. On the contrary, one standard is established, one positive policy is determined, one precise goal is specified. This standard, this policy and this goal are all contained in one word, uniformity. Taxes, always obnoxious, become abhorrent when uniformity of assessment is lacking. The stated aim of the Legislature in the enactments involved herein is to attain uniformity in real estate assessment.
Of all the revenue-producing plans which man has devised to provide for the needs of the sovereign — and, it must be added, to meet the ever increasing demands of the electorate for services — the property tax may be regarded as the most basic, but at the same time it must be recognized as one of the most difficult to administer. (In this comparison we do not take into account such rare oddities as the Ohio Sales and Use Tax.) The valuation of intangible personal property for purposes of taxation presents no particular problem, and, although there may be vexatious considerations involved, few really serious difficulties are encountered in the valuation of such tangible personal property as is taxed in Ohio. On the other hand, the problems of valuation determination in the field of real-property taxation are as old as the tax itself.
'While relatively few persons have ever subscribed to the extreme position of the single taxers, even fewer have seriously debated the propriety of a tax on the ownership of land. And all those who have recognized real-property taxation as a primary source of public funds have long sought the elusive goal of uniformity.
*454 The desirability of an equitable sharing of the tax burden is not, of course, limited to land taxes. The same end is equally desirable in any area of revenue production but is in some instances more readily accomplished or, at least, approached. There is no great difficulty, for example, in attaining uniformity in such fields as corporate-franchise, inheritance, alcoholic-beverage, public-utilities, cigarette or motor-fuel taxes, and were it not for the deduction features even the income tax could be considered a relatively easily administered tax of uniform application. Returning to the field of real-property taxation, however, we quickly realize how much more difficult is the accomplishment of uniformity.
The problem of attaining uniformity takes on a greater significance when we move from the county to the state level. This is true because in specified areas state assistance is not available until, according to criteria determined by the Legislature, a local subdivision is bearing its own share of the load. The basic criterion is the ratio of the tax rate to the subdivision’s total tax duplicate. In order to qualify for such so-called state aid, a subdivision’s revenues must remain inadequate for the required purpose even though this ratio has attained a level set by the Legislature. Under such legislation, if county A’s assessments are higher than county B’s, A and its subdivisions may not only not become available for state aid, but its taxpayers may actually be paying part of the cost of improvements provided by state aid for county B. Further, although the amount of the levies involved have not heretofore been great, a further imperative reason for state-wide uniformity is to be found in the existence of state-wide levies. Two such levies presently exist to provide for war-compensation bond retirements, and inequality of burden must accompany such inequality of assessment as exists. In such circumstances, uniformity of assessment ceases to be of local concern exclusively, as has been recognized by the statutes and rule complained of here.
In all branches of governmental activity, the complexities *455 of operation have greatly increased in recent times, and in the field of taxation those increases have been by geometric progression. Even though the sessions of the General Assembly of Ohio have been rather constantly increasing in duration, it can never become expert in the many areas of government which come under its control, and indeed it should not be expected to become so. Thus it should and does delegate functions to full-time agencies, experts in their assigned fields of function. In the field of real-property taxation, the General Assembly has found it sufficient to' promulgate a statement of policy and by a general legislative outline to canalize (to use Justice Cardozo’s singularly descriptive word) the operations of the administrative agencies charged with tax assessment and collection. Recognition is given to the fact that a county auditor is best equipped to make determinations within his domain, but the fact has also been realistically faced that there must be provided a. common source of supervision for the assessing function in the 88 counties. A good county auditor can achieve uniformity of assessment within his county, and a properly functioning state hoard of tax appeals can spread this uniformity throughout the entire 88 counties, as, indeed, does a single state tax commissioner in assessing all of the taxable personal property in Ohio.
Realizing that a full-time administrative agency is better qualified to deal with the details of tax assessment than the General Assembly itself, the General Assembly enacted Section 5715.01, Revised Code, set forth in full above. It will be noted that this section authorizes the board to assess real property by “uniform rule according to value” and provides that such determination shall be “on the basis of all facts and circumstances which the board finds necessary in order to achieve uniformity and avoid overvaluation and discrimination.” In this enactment the General Assembly canalized the discretionary powers of the board, and we find that there is no delegation of legislative authority in this section, and that it sufficiently fixes standards of guidance for the board while leaving to it the making of subordinate rules within those fixed standards.
*456 The remaining contention of the auditor is that Sections 5703.02 (K) and 5715.01, Revised Code, as amended by Amended Senate Bill No. 109 adopted by the 102nd General Assembly, are violative of Section 2, Article XII of the Ohio Constitution. This constitutional provision is in part as follows:
“No property, taxed according to value, shall be so taxed in excess of one per cent of its true value in money for all state and local purposes, but laws may be passed authorizing additional taxes to be levied outside of such limitation, either when approved by at least a majority of the electors of the tax district voting on such proposition, or when provided for by the charter of a municipal corporation. Land and improvements thereon shall be taxed by uniform rule according to value.” (Emphasis supplied.)
The heart of the auditor’s argument on this point is found in the departure from the phrase, “true value in money,” in the statutes complained of and in rule No. 100, it being his position that this change of phrasing will make possible an increase in taxation over the one-per-cent limitation.
We can not agree with this contention. Section 2, Article XII of the Constitution, is a limitation and was designed to provide a maximum and states this in terms of “true value in money.” It does not prevent the establishment of a standard different from that of its own (“true value in money”) but only establishes a maximum, which may not be exceeded. The General Assembly is not limited thereby from establishing another formula so long as the constitutional maximum is not exceeded. For example, it could provide a basis of two per cent of some valuation of its own definition, if that does not exceed one per cent of true value in money. It has done such a thing in enacting a statute under which tax assessments are based on “taxable value.” So long as that “taxable value” is uniformly applied and falls below the maximum established by the Constitution, there can not be found a violation of the Constitution. In other words, a provision that taxes shall be levied on the basis of a formula different from “true value in *457 money” is not in violation of Section 2, Article XII of the Constitution, so long as the maximum therein established is not exceeded.
We conclude, as did the Court of Appeals, that the rules of the board complained of are reasonable and lawful, that they are in accordance with the expressed legislative policy, and that the legislative enactments at issue are constitutional. Accordingly, the judgment of the Court of Appeals is affirmed.

Judgment affirmed.

Weygandt, C. J., Zimmerman, Bell and Herbert, JJ., concur.